782 F.2d 674
 121 L.R.R.M. (BNA) 2465, 54 USLW 2409,
104 Lab.Cas. P 11,815
 H. Jack FRANDSEN, Plaintiff-Appellant,
v.
BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP CLERKS,
FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES
and Missouri Pacific Railroad Company,
Defendants- Appellees.
 No. 85-1293.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 13, 1985.
Decided Jan. 24, 1986.
 
 Paul Alan Levy, Public Citizen Litigation Group, Washington, D.C., for plaintiff-appellant.
 John Edmond, Guerrieri & Sweeney, Washington, D.C., James C. Cook, Walker & Williams, Belleville, Ill., for defendants-appellees.
 Before CUMMINGS, Chief Judge, BAUER and FLAUM, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 This case presents an issue of first impression for this court concerning a union's duty of fair representation. The plaintiff here sued his union and employer two years after a change of employers resulted in a loss of his seniority rights. The district court ruled that under the Supreme Court's decision in DelCostello v. Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the plaintiff's complaint had not been timely filed within the six-month statute of limitations. The plaintiff argued that under Clayton v. UAW, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), the exhaustion of internal union remedies was normally a prerequisite to a duty of fair representation suit and that in this case, since exhaustion was required and pursued, the statute of limitations was tolled. The district court found that the plaintiff's exhaustion of internal remedies was "futile" and thus would be excused under the "futility" exception recognized in Clayton. The district court held that when exhaustion is not required under Clayton, there is no reason to postpone the litigation, and therefore the statute of limitations was not tolled.
 
 
 2
 We reconcile these two Supreme Court doctrines in favor of exhaustion of intra-union remedies and reverse and remand the district court's holding for the union and the railroad-employer.
 
 
 3
 * In March 1982, the defendant Missouri Pacific Railroad Company ("MOPAC") received approval from the Interstate Commerce Commission to purchase approximately seventy miles of railroad track between Pana and Mitchell, Illinois that the Consolidated Rail Corporation ("Conrail") was abandoning.[1] The nine Conrail employees, including the plaintiff H. Jack Frandsen, who worked on this stretch of railroad, were represented by the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees ("BRAC"). BRAC also represented 195 MOPAC employees in that company's St. Louis Terminal District 24, into which the Conrail line was to be merged.
 
 
 4
 H. Jack Frandsen has been a railroad employee and member of the defendant union BRAC since 1944. In 1982 he was working as a signal-block operator in Mitchell, Illinois for Conrail. Because of his thirty-eight years of seniority with Conrail, Frandsen had the right to remain employed by Conrail by "bumping" into other positions at Conrail occupied by employees with less seniority. Under traditional BRAC practices, Frandsen could also choose to keep his old job, but work for the new employer, MOPAC, who purchased the section of track he worked on. Accordingly, BRAC entered into negotiations with MOPAC, which culminated in an agreement on April 15, 1982 that offered the nine Conrail employees, including Frandsen, employment with MOPAC. The Agreement provided that the Conrail employees accepting MOPAC's employment offer were to have "prior rights" to their current positions,[2] which meant that they would receive a MOPAC seniority date of April 16, 1982, which gave them the option of displacing any employee who was hired after that date.
 
 
 5
 But at the time Frandsen had to make a choice, this agreement was not yet finalized. In exercising his choice of whether to stay with the same employer in a new job, or to stay in his old job with a new employer, seniority considerations were crucial for Frandsen, because if he left Conrail to work for MOPAC without "dovetailing" protection, he would forfeit all of the seniority rights that he had accumulated at Conrail.[3] Frandsen had heard that MOPAC proposed to allow dovetailing, and this understanding was supported by Al Archual, the BRAC General Chairman for Conrail. Yet it was not until the night of April 15, 1982, just before he had to choose whether to switch employers or switch jobs, that plaintiff was allegedly assured by the local MOPAC Chairman, R.L. Teahan, that an agreement providing for dovetailing had been adopted.
 
 
 6
 The next day, after Frandsen had chosen to go with MOPAC, he found out that rather than being "dovetailed" by the Agreement, he would be "endtailed": his seniority would begin that day, April 16, 1982, so that he would have less seniority than the most junior MOPAC employee.[4]
 
 
 7
 On May 10, 1982, five of the transferred Conrail employees, including Frandsen, appealed to BRAC President R.I. Kilroy and protested the terms of the April 15 Agreement. Subsequently, believing that Kilroy was delaying a decision on the appeal, the five former Conrail employees wrote to him on July 12 and again on July 19, 1982, indicating that they were prepared to file a lawsuit if necessary. On the same day, July 19, 1982, Frandsen reviewed a letter from Kilroy to Frandsen's Local Chairman Robert L. Teahan, which distinguished the internal union appeal procedures for protesting the manner in which a grievance was handled from those procedures required to achieve a change in a negotiated collective bargaining agreement. By the next day, two of the five, but not Frandsen, had retained counsel.
 
 
 8
 Kilroy did not directly respond to their appeal until August 25, 1982, when he held that the April 15 Agreement was fair under the circumstances and complied with the intent and the purpose of the BRAC Constitution. Frandsen appealed that decision to BRAC's International Executive Council on September 3, 1982. By October 11, 1982 Frandsen felt that his appeal was not being ruled on promptly and wrote to the Secretary of BRAC's Executive Council to protest the delay. In that letter Frandsen stated that he had "reviewed the Constitution of the Grand Lodge and [was] aware that certain appellate procedures must be followed before outside action was taken. However, in the event irreparable harm may occur ... as a consequence of the slowness of the appeal procedure built into the International Constitution, it is possible that other action may be necessary."
 
 
 9
 No union officer at any time directly sought to correct Frandsen's misconception that intra-union exhaustion was required, and it was not until September 23, 1983, eleven months after Frandsen filed his appeal to the Executive Council and more than ten months following his letter to the Secretary implying that he might be forced to take "outside action," that the Executive Council voted to sustain President Kilroy's decision.
 
 
 10
 On March 7, 1984, less than six months from the formal ruling of the Union's International Executive Council, Frandsen filed this action. In his complaint Frandsen alleged that BRAC, BRAC's General Chairman for MOPAC, T.W. Taggart, Jr., and BRAC's International President, R.I. Kilroy, had breached the duty of fair representation they owed to him by negotiating an agreement that deprived him of almost forty years of seniority. Frandsen further contended that MOPAC had conspired with BRAC to deprive him of his seniority and thus that MOPAC shared in BRAC's liability.
 
 
 11
 BRAC subsequently moved for summary judgment, alleging (1) that Frandsen's cause of action accrued on April 16, 1982 when he became aware of the terms of the April 15 Agreement and, therefore, that his claim was barred by DelCostello's six-month limitation period, and (2) that on the merits Frandsen's complaint failed to state a claim for breach of the duty of fair representation.
 
 
 12
 The district court granted BRAC's motion for summary judgment in an opinion reported at 601 F.Supp. 941. The court held that under DelCostello, Frandsen's complaint had not been timely filed within six months after his cause of action accrued on April 16, 1982. The district court thoroughly analyzed the issue and recognized that under Clayton, the exhaustion of internal union remedies was normally a prerequisite to a duty of fair representation suit unless exhaustion would not promote private resolution of the dispute. If exhaustion is required by the circumstances of the case, then the six-month statute of limitations is tolled during the pendency of the intra-union proceedings. The district court asserted, however, that when exhaustion is not required, there is no reason to toll the statute and thus postpone the litigation. The court stated, "In other words, if the plaintiff reaps the benefit from the no exhaustion rule, he must also pay the costs." 601 F.Supp. at 944.
 
 
 13
 Applying this analysis to the facts before him, the judge decided that when the alleged breach consists not of a failure to process a grievance, but rather of improper negotiation of an agreement, the internal remedy cannot possibly afford aggrieved employees the relief sought in the litigation, because effective relief would require modification of the collective bargaining agreement. Thus, according to the district court, exhaustion would be excused under the Clayton "futility" exception in every case of this kind. Although the district court recognized that unions can sometimes renegotiate contracts, it reasoned that if the mere possibility of renegotiation meant that exhaustion was not futile, the entire futility exception would evaporate, and that the Supreme Court could not have intended such a result. Moreover, the court was not convinced "that the slight possibility of nonjudicial resolution resulting from the pursuance of futile internal union remedies outweighs the need for a quick and complete judicial resolution." Accordingly, the district court concluded that "pursuance of internal union remedies which cannot afford the grievant complete relief does not toll the six-month statute of limitations." 601 F.Supp. at 945. Frandsen now appeals the district court's grant of summary judgment for the defendants.
 
 II
 
 14
 This case presents a tension between policy and procedure and calls for this court to "fine-tune" the interrelationship of two distinct legal doctrines. Thus, it is necessary at the outset to review the policy underlying the duty of fair representation and the two procedural rules that channel the resolution of claims alleging that the duty has been violated. These two procedures involve the exhaustion of internal union remedies and the statute of limitations governing when claims can be brought. Traditionally, the purpose of the exhaustion doctrine has been to encourage private rather than judicial resolution of disputes. Clayton, 451 U.S. at 689, 101 S.Ct. at 2095. The purpose behind the six-month statute of limitations is a rapid resolution of labor disputes. DelCostello, 462 U.S. at 168, 103 S.Ct. at 2292. While these two goals are not necessarily mutually exclusive, they appear to conflict when internal union procedures take longer than six months.
 
 
 15
 A union's duty of fair representation to its members is not set forth in any labor statute. Rather, it is the result of judicial interpretation of federal labor policies. See, e.g., DelCostello, 103 S.Ct. at 2290, ("[the duty] is implied under the scheme of the National Labor Relations Act");[5] Vaca v. Sipes, 386 U.S. 171, 182, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 (1967) (the duty stands "as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law"). These policies are the products of a legal system that places a high value on the rights of the individual but that nevertheless makes collective bargaining the centerpiece of its national labor policy. As the courts have recognized, the duty of fair representation arises out of the collective bargaining scheme, which gives a majority of employees in an appropriate bargaining unit the right not only to choose a representative for purposes of collective bargaining, but also to impose its choice on all employees in the union, depriving the minority of the right to bargain for itself. See, e.g., Emporium-Capwell Co. v. Western Addition Community Organization, 420 U.S. 50, 95 S.Ct. 977, 43 L.Ed.2d 12 (1975); Section 9, National Labor Relations Act ("NLRA"), 29 U.S.C. Sec. 159; Section 2, Fourth and Ninth, Railway Labor Act ("RLA"), 45 U.S.C. Sec. 152.
 
 
 16
 With such exclusive and collective authority comes a responsibility to the individuals whose bargaining rights are correspondingly limited. As the Supreme Court recognized in Steele v. Louisville & Nashville R.R., 323 U.S. 192, 198-99, 65 S.Ct. 226, 230, 89 L.Ed. 173 (1944), unions must be duty-bound to exercise in a fair manner the statutory power to bargain on behalf of all employees. In addition, because the collective representative often controls the individual's access to the grievance system, the Court ruled that the duty of fair representation extends to the union's exercise of this power of access as well. See Hines v. Anchor Motor Freight, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).
 
 
 17
 In Clayton the Supreme Court addressed the relationship between the policies requiring that a judicial forum be available to enforce the duty of fair representation and the conflicting national labor policy of encouraging nonjudicial resolution of labor disputes. The Court made clear that in most cases exhaustion of union remedies should be required in order to advance the policy of nonjudicial resolutions. But where intra-union remedies were not adequate to redress the employee's grievances, where "the member [may] become exhausted instead of the remedies," NLRB v. Marine Workers Local 22, 391 U.S. 418, 425, 88 S.Ct. 1717, 1722, 20 L.Ed.2d 706 (1968), it would be unfair to the employee to insist that internal union remedies be exhausted before going to court. The Court in Clayton reiterated that district courts have discretion to decide whether to require exhaustion of internal union procedures and said:
 
 
 18
 In exercising this discretion at least three factors should be relevant: first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim, second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under Sec. 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.
 
 
 19
 Clayton, 451 U.S. at 689, 101 S.Ct. at 2095.
 
 
 20
 It is important to note that this "futility exception" was designed because it would be unfair to the union member, not the union, to insist on exhaustion of futile internal remedies. The Supreme Court balanced the policies favoring exhaustion against the policies favoring an employee's right to obtain quick judicial protection against arbitrary union conduct and concluded, in the context of futile union remedies, that the latter policy outweighed the former. After Clayton, then, the union member clearly must exhaust unless an intra-union appeal is demonstrably futile, in which case he or she has every incentive to file suit without delay. If a union wishes to move the member's grievance into the courtroom, it merely need rapidly determine the intra-union appeals to fulfill the exhaustion requirement.[6]
 
 
 21
 The problem of delay was further addressed by the Court's choice of a statute of limitations for duty of fair representation claims. The Supreme Court was forced to chose a statute of limitations in DelCostello because Congress did not specify one for duty of fair representation claims. The Court had first decided in United Parcel Service v. Mitchell, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), that among possible state statutes, the limitation period for seeking to vacate an arbitration award was the most analogous one. The alternatives, such as tort or contract limitations, were simply too long. Many of those alternatives often allowed as long as six years to pass before filing suit. In DelCostello, the Court ruled that the 90 day period generally used for vacating arbitration awards was too short to give employees a fair chance to assert a duty of fair representation claim, given the hardships inherent in bringing such actions.[7] Instead, it adopted the six-month limitation period that Congress provided for filing an administrative charge with the National Labor Relations Board. Section 10(b), NLRA, 29 U.S.C. Sec. 160(b). In doing so, the Court struck a balance between the national interest in expediting the resolution of labor disputes, and the claimant's interest in obtaining a resolution of his claim on the merits, and concluded that the balance was similar in the contexts of both section 10(b) and duty of fair representation suits.
 
 
 22
 Clayton and DelCostello, read together, envisage the following scheme: an employee seeking to vindicate his right to fair representation has six months from the date of his injury to file suit in federal court. At the same time, however, he must pursue internal union procedures that possibly may provide him with a remedy. Thus, during the pendency of those union procedures, the six-month statute of limitations is tolled, to commence running only when the union procedures are exhausted. The question remains, however, how to handle the employee who pursues union procedures that are futile. Should the statute of limitations be tolled where Clayton relieves the employee of the exhaustion requirement? The existence of this unresolved question leaves the injured employee with a dilemma. If the employee does not exhaust internal union remedies, he can be certain that the defendant union will argue that this requires dismissal of the action. On the other hand, if the employee does pursue those remedies, he knows that the union will argue that exhaustion would have been futile, and therefore that the statute of limitations should not be tolled during the time it took the employee to exhaust. This is the "Catch 22" that Frandsen alleges he is caught in. He argues that under the district court's holding, if Clayton doesn't get him, DelCostello will.
 
 III
 
 23
 We resolve this problem by reversing the district court and holding that the DelCostello statute of limitations is tolled by the pursuit of internal union remedies, even where those remedies are ultimately determined to have been futile. Our reasons are simple. First, the district court's rule would contravene the national labor policy of encouraging workers to pursue internal union remedies, while ensuring them a judicial forum in which to resolve disputes. The Supreme Court did not change this policy in Clayton, but merely made an exception to the general rule for situations in which pursuing those internal remedies would be futile. Clayton, 451 U.S. at 693, 101 S.Ct. at 2097; see also Kross v. Western Electric Company, 701 F.2d 1238 (7th Cir.1983). This exception is designed to confer a benefit to the employee, and there is no language in Clayton, or in any other Supreme Court case, that suggests the worker must pay a cost to get this benefit. It may even be unwise to call the Clayton exception a benefit when the worker has a right to a federal forum that Congress delays only for policy reasons. As we discussed in section II of this opinion, the core of the duty of fair representation is to protect the rights of individuals that are limited by the NLRA. Clayton was not designed to further frustrate access to a federal forum that the national labor policy already compromises.
 
 
 24
 DelCostello 's six-month statute of limitations lengthened the amount of time a worker had in most states to file a claim in court after exhausting internal union appeals. This too can be called a benefit to the worker, but again there is no necessary and corresponding cost to the worker, other than the expense of federal litigation. The reason the Supreme Court granted workers the benefit of a longer statute of limitations was its recognition that the individual employee usually had to make a decision of whether and when to file while unrepresented by counsel, while unemployed, and after having been abandoned by the very organization he expected to represent his best interests: his Brotherhood, the Union. A rule forbidding tolling in situations such as this, therefore, would turn the purpose of Clayton and DelCostello on its head by making it more difficult to pursue a duty of fair representation claim in federal court.
 
 
 25
 Second, the defendant's scheme is unworkable in practice because it is not always easy to tell whether or not pursuing an internal union remedy is futile.[8] In hindsight it may seem perfectly clear whether or not a claim could have been resolved by the union itself. But that clarity may be illusory to the layman in the midst of unfolding events. In Clayton the Supreme Court did not lay down a bright-line rule for when exhaustion of internal remedies was not necessary. The Court did not limit the possible exceptions to the three that it listed and stated that if events appeared to require immediate resolution, "the court may properly excuse" exhaustion. 451 U.S. at 689, 101 S.Ct. at 2095. Whether or not to excuse exhaustion is a matter of discretion for the district court, and as our frequent opinions on the topic make clear, there is nothing clear-cut about the factors that will excuse exhaustion. See Vallone v. Teamsters Local 705, 755 F.2d 520 (7th Cir.1984); Lewis v. Laborers Local 100, 750 F.2d 1368, 1380-81 (7th Cir.1984); Kross, 701 F.2d at 1246; Rupe v. Spector Freight Systems, 679 F.2d 685 (7th Cir.1982); Miller v. General Motors, 675 F.2d 146; Battle v. Clark Equipment Company, 579 F.2d 1338, 1343 (7th Cir.1978). The different factors and fact patterns in these cases, which represent just a few of the exhaustion disputes in this circuit alone, make it clear that it is virtually impossible to predict when the futility exception will apply. See generally Gibbs, Siegel and Levy, Employee and Union Member Guide to Labor Law, 8-82 (1984). Whether or not Frandsen's intraunion appeal was futile, therefore, represents a distinction too problematic to be the determinative question in each case of this kind.[9]
 
 
 26
 Moreover, we have made clear that under Clayton, exhaustion can, and often should, be required even if the internal review procedure could not afford the claimant the full relief sought in the lawsuit. See Koss, 701 F.2d at 1246; Miller, 675 F.2d at 149. In Koss and Miller we reasoned that if partial relief is obtained, the marginal increase in relief obtained in litigation may not be worth the corresponding increase in expense and risk. The intraunion grievance system may also persuade the member that a claim is not so strong as it might have seemed, or may produce a genuine compromise. The pursuit of a nonjudicial procedure may, if perceived as fair, have a conciliatory or therapeutic value that lessens the employee's perceived need to file suit. As the Supreme Court said in Alexander v. Gardner-Denver Co., 415 U.S. 36, 55, 94 S.Ct. 1011, 1023, 39 L.Ed.2d 147 (1974):
 
 
 27
 An employee thus has an incentive to make available the conciliatory and therapeutic processes of arbitration which may satisfy an employee's perceived need to resort to the judicial forum, thus saving the employer the expense and aggravation associated with a lawsuit. For similar reasons, the employee also has a strong incentive to arbitrate grievances, and arbitration may often eliminate those misunderstandings or discriminatory practices that might otherwise precipitate resort to the judicial forum.
 
 
 28
 Exhaustion may thus avoid litigation even if it cannot provide "complete relief." In addition, exhaustion gives the union's political processes an opportunity to resolve internal disputes without outside interference, and thus, in the long run, improves the union's overall representation of its members.
 
 
 29
 Finally, the district court's solution in this case may have adverse repercussions for the judicial system. Despite the advantages obtained when exhaustion may be excused under Clayton, a court that considers excusing exhaustion in a particular case, in order to allow a claim to be heard, would have to recognize that such a ruling would have the effect of forbidding exhaustion in like cases, because the statute could not be tolled.
 
 
 30
 The discretionary exhaustion standard formulated by the Supreme Court in Clayton, and reaffirmed by this court, is itself a reason to err on the side of exhaustion because if the employee gambles incorrectly in a close case, the suit will be dismissed. Thus, the safe bet is to exhaust. See Monroe v. UAW, 723 F.2d 22, 26 (6th Cir.1983). The district court's rule would shift the incentives in the opposite direction and thus possibly increase the number of duty of fair representation cases filed. An employee would recognize that if a court ultimately ruled that exhaustion was not required, a suit filed after exhaustion would inevitably be dismissed as untimely. If a court ruled that exhaustion was required, the consequences probably are far less severe. If such a suit were stayed, as the Supreme Court has said it should be, nothing but time would be lost: even if a case were dismissed, it could theoretically be refiled once the required exhaustion was completed. The district court's rule could lead to a flood of cautionary litigation, see Scott v. Teamsters Local 863, 725 F.2d 226, 230 (3d Cir.1984), thereby undermining the very policy behind the exhaustion doctrine. See also Billings v. Chicago, Rock Island and Pacific Railroad Co., 581 F.2d 707, 711 (8th Cir.1978).
 
 
 31
 For these reasons we hold that the six-month statute of limitations mandated by DelCostello is tolled until intraunion remedies are exhausted, even if those remedies are ultimately determined to have been futile.
 
 IV
 
 32
 As in the case in most duty of fair representation disputes, Frandsen claims that his employer, MOPAC, is liable to him as a party to BRAC's alleged duty of fair representation breach. Unlike the usual hybrid duty of fair representation claim, however, the plaintiff does not bring a direct claim against his employer based on section 301 of the LMRA, 29 U.S.C. Sec. 185, because section 301 does not apply to employers, such as MOPAC, who are subject to the Railway Labor Act ("RLA"). Therefore, while the typical section 301 claim against the employer could proceed separately from the claim against the union, the allegation here is merely that MOPAC is a party to BRAC's breach. Thus, as the district court observed, if the claim against BRAC is dismissed, the claim against MOPAC must also be dismissed. United Independent Flight Officers, Inc. v. United Airlines, Inc., 756 F.2d 1274, 1283 (7th Cir.1985). The question that must be answered here is if the claim against BRAC is allowed, must the claim against MOPAC also be allowed to proceed? In this case the answer is yes.[10]
 
 
 33
 The railroad-employer argues that Frandsen should have grieved against it through the procedures set up by the RLA, and therefore that Frandsen's failure to do so requires us to hold that the six-month statute of limitations bars his claim. We disagree and conclude that Frandsen did not have to pursue his grievance against the railroad in order to toll the statute of limitations against both the union and the employer during his pursuit of intra-union remedies. There are two reasons for this holding. First, Frandsen's fair representation claim is not a "minor dispute" that can be grieved directly to the railroad and then to the National Railroad Adjustment Board. Second, tolling the statute of limitations against both the union and the employer furthers the national labor policies articulated in Clayton and DelCostello.
 
 
 34
 Frandsen's claim is not of a type that the Railway Labor Act procedures resolve. The Railway Labor Act establishes a mandatory procedure for resolving certain disputes between a rail carrier and its employees. Although the Act does not label the type of dispute that can be resolved by its procedures, the term "minor dispute" is commonly applied. Elgin, Joliet and Eastern Railway v. Burley, 325 U.S. 711, 722-24, 65 S.Ct. 1282, 1289-90, 89 L.Ed. 1886 (1945). The statutory definition for such "minor disputes" appears in section 3 of the Act which covers disputes "between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. Sec. 152, First (i) (emphasis added). Thus, "minor disputes" are controversies between railroads and employees over the meaning of an existing right or application of a collective bargaining agreement in a particular factual situation. Slocum v. Delaware L. & W.R.R. Co., 339 U.S. 239, 240, 70 S.Ct. 577, 578, 94 L.Ed. 795 (1950). But the courts will take jurisdiction over non-minor disputes between employees and their railroad employers without requiring exhaustion of Adjustment Board remedies because those remedies would be "absolutely futile." Glover v. St. Louis-San Francisco Railroad Co., 393 U.S. 324, 330, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969). See also Sisco v. Consolidated Rail Corp., 732 F.2d 1188, 1190-91 (3d Cir.1984).
 
 
 35
 Our task is to decide how to characterize the dispute raised in Frandsen's action. Frandsen alleges that the railroad conspired with the union to breach the duty of fair representation owed him.[11] A fair representation claim, regardless of its factual context, is by definition a "non-minor" dispute since it involves the implied statutory relationship between a union and those it represents rather than the actual contractual relationship over which the NRAB has jurisdiction.
 
 
 36
 Second, the national labor policy specifically rejects the notion that an employer is treated unfairly by not having separate proceedings initiated against it. Under the LMRA, for example, the Supreme Court has expressed reservations about having different temporal limitations for the union and the employer when the basic allegation is one of conspiracy or collusion between the two. In Clayton, the Supreme Court rejected the doctrine that an employee's failure to exhaust intra-union remedies gave a defense to the union but not to the employer. 451 U.S. at 695, 101 S.Ct. at 2098. The Court was concerned that this differentiation would force the employee to bring two separate lawsuits: first against the employer in order to beat the statute of limitations, and then, because the statute of limitations was tolled during the exhaustion of internal appeals, against the union. The Court stated that the resulting piecemeal litigation should be avoided. Id. In DelCostello, one of the reasons given by the Court for selecting the limitation period in 10(b) of the NLRA, rather than one provided by state law, was that this selection would avoid "establishing different limitations periods for the two halves" of the action. 462 U.S. at 169 n. 19, 103 S.Ct. at 2293 n. 19.
 
 
 37
 As discussed in section III of this opinion, the national labor policy articulated in Clayton and DelCostello is furthered by not burdening the employee merely because he gets the benefit of tolling the statute of limitations under the LMRA. We see no reason why the employee's claim should be treated differently under the RLA, and thus we hold that the statute of limitations is tolled against both the union and the railroad while the employee pursues internal union remedies, even if those administrative appeals are futile, as long as the employee makes a duty of fair representation claim based on a collusion of union and employer.
 
 
 38
 The apparent harshness of this holding toward the employer is muted because like the normal hybrid duty of fair representation/section 301 claim, the employer-railroad is a defendant here solely to permit the district court to award the plaintiff-employee full relief from the results of the union's breach of its obligations as his collective bargaining representative. Moreover, if that relief is burdensome to the railroad, it can invoke Bowen v. Postal Service, 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983), to require the union to shoulder the responsibility for any increased costs caused by the railroad's reliance on the union's actions and by the union's failure to notify the railroad of the pending intra-union claim. Id. at 227 n. 16, 103 S.Ct. at 597 n. 16.
 
 V
 
 39
 Therefore, the judgment of the district court is reversed and remanded for consideration of the merits of the plaintiff's complaint against both the union and the railroad.
 
 
 
 [1]
 Because we are reviewing here the grant for a motion for summary judgment it is appropriate to note that the court must view the evidence, and the reasonable inferences to be drawn therefrom, in the light most favorable to the party opposing summary judgment. Yorger v. Pittsburg Corning Corp., 733 F.2d 1215 (7th Cir.1984)
 
 
 [2]
 "Prior rights" is a frequently used method of consolidating seniority rosters, by which transferred employees continue to have a seniority preference to those jobs attributable to their original employer but acquire a new seniority date as of the date of the consolidation. See Zapp v. United Transportation Union, 727 F.2d 617, 620 (7th Cir.1984). In addition to the April 15 Agreement, BRAC arranged for the nine former Conrail employees to retain their Conrail seniority for two years, so that in the event their positions in MOPAC were abolished they would be entitled to return to Conrail and would be eligible for Conrail protective benefits
 
 
 [3]
 "Dovetailing" is a method of integrating seniority lists that involves merging the lists into a consolidated roster with each employee listed sequentially according to his or her original seniority date. See Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964)
 
 
 [4]
 The justification for this action, which Frandsen claims was an unexpected departure from the standard union practice, was that "dovetailing" would be unfair to the then-current MOPAC employees who would be forced down the seniority roster if the nine Conrail employees were cut into the line. We agree with Frandsen that it is significant in this case that one union represented the nine "new" and the 195 "old" employees. The old MOPAC employees greatly outnumbered the new transferring employees and thus were a more powerful constituent block to the union officers who negotiated the Agreement. This creates a classic conflict for a duty of fair representation case
 
 
 [5]
 In a footnote in DelCostello, 462 U.S. 164-65 n. 14, 103 S.Ct. at 2290-91 n. 14, the Supreme Court described the policy and purpose of the duty:
 The duty of fair representation exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative. In such a system, if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). See generally Steele v. Louisville & N.R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); Ford Motor Co. v. Huffman, 345 U.S. 330, 337, 73 S.Ct. 681, 685, 97 L.Ed. 1048 (1953); Syres v. Oil Workers International Union, 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785 (1955); Humphrey v. Moore, 375 U.S. 335, 342, 84 S.Ct. 363, 367, 11 L.Ed.2d 370 (1964); R. Gorman Labor Law 695-728 (1976).
 We expound on this language here only to lay the premise for our conclusion in section III that there is in reality no conflict between Clayton and DelCostello.
 
 
 [6]
 Unions are limited in preventing a plaintiff from seeking judicial relief not only by Clayton, but also by Section 101(a)(4) of the Labor-Management Reporting and Disclosure Act ("Landrum-Griffin Act"), 29 U.S.C. Sec. 411(a)(4), which restricts the period during which a union can insist that a member exhaust internal hearing procedures prior to filing suit. This section provides that:
 No labor organization shall limit the right of any member thereof to institute an action in any court, ... Provided, that any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal ... proceedings against such organizations.
 29 U.S.C. Sec. 411(a)(4).
 The defendant Union argues that Frandsen's claims should be barred because his intra-union appeals took more than four months: the Executive Council did not issue its decision until September 22, 1983, eleven months following Frandsen's appeal to the Council and eighteen months after his cause of action accrued on April 16, 1982. At least one article argues persuasively that the four-month rule applies only to suits under the union democracy provisions of the Landrum-Griffin Act, and not to duty of fair representation claims. See Fox and Sonnenthal, Section 301 and Exhaustion of Intra-Union Appeals: A Misbegotten Marriage, 128 U.Pa.L.Rev. 989, 998-99 (1980). The Fifth Circuit has held, in Hayes v. BRAC, 734 F.2d 219, 221 (1984), that "it is an open question whether the exhaustion guidelines of section 101(a)(4) apply in section 301 actions." However, in this case Frandsen should not bear the burden of his union's delay when he repeatedly voiced his wish that his dispute be settled promptly. The Landrum-Griffin Act places a burden on both the union and the union member to not delay "reasonable hearing procedures." There is no allegation in this case that the plaintiff intentionally sought to, or did, delay the intra-union hearing procedures. Only the Union can explain why its Executive Council took eighteen months to decide Frandsen's appeal and Frandsen should not bear the cost of its delay. Whether or not this section of the Act applies to all duty of fair representation claims is an open question that we do not decide today. However, it clearly does not apply in this case where Frandsen was not on notice that after four months he could file a federal claim, and where the Union, and the Union's constitution, lead him to believe that exhaustion was required.
 
 
 [7]
 The Court in DelCostello outlined those hardships by comparing the situation of a union member to the situation of a party to a commercial arbitration: the situation the Court analogized to in Mitchell. The Court stated in DelCostello:
 The main difference is that a party to commercial arbitration will ordinarily be represented by counsel or, at least, will have some experience in matters of commercial dealings and contract negotiation. Moreover, an action to vacate a commercial arbitral award will rarely raise any issues not already presented and contested in the arbitration proceeding itself. In the labor setting, by contrast, the employee will often be unsophisticated in collective-bargaining matters, and he will almost always be represented solely by the union. He is called upon, within the limitations period, to evaluate the adequacy of the union's representation, to retain counsel, to investigate substantial matters that were not at issue in the arbitration proceeding, and to frame his suit. Yet state arbitration statutes typically provide very short times in which to sue for vacation of arbitration awards.
 462 U.S. 165-66, 103 S.Ct. at 2290-91. These same factors play an important role in our decision today. While not determinative, the hardships posed in the path of a potential grievant are probative of whether it was Congress's intent not to allow union members to come to court if they do not correctly make the rather sophisticated determination that intra-union remedies are futile in their particular case, or as is discussed in section IV, whether their grievance fits into the "minor dispute" category of complaints that can be taken directly to the railroad-employer.
 
 
 [8]
 The union argues that Frandsen's proposal that the statute of limitations is tolled whenever a union member pursues intra-union procedures is unrealistic and unworkable. They argue that by examining BRAC's Constitution we will find that although Frandsen pursued his appeal to the Executive Council, he did not entirely exhaust his internal union remedies before filing suit. Article 16, Section 15 of the BRAC Constitution provides that: "[a]ny ... number of the Brotherhood feeling aggrieved by the decision of the Executive Council may appeal to the Grand Lodge Convention...." Because BRAC only holds a Grand Lodge Convention every four years, BRAC argues that Frandsen could appeal a grievance to the next Grand Lodge Convention and thus postpone litigation for up to four years even if his claim fell under the futile exception in Clayton. However, we note that this merely demonstrates again that the union is in control of the amount of time between accrual of the wrong and the filing of a suit. The union cannot complain about the length of procedures that it itself devised and now controls. The union can and should encourage timely conclusions to intra-union appeals. In addition, it would be blatently unreasonable to find that a union member did not exhaust all intra-union procedures when he did not appeal to a ruling board that meets only once every four years. In that case, it is the union, not the member, that is violating the national labor policy of encouraging prompt resolution of disputes. See Metz v. Tootsie Roll, 715 F.2d 299, 304 (7th Cir.1983), cert. denied, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984)
 
 
 [9]
 BRAC relies on a footnote in Schultz v. Owens-Illinois, 696 F.2d 505, 514 n. 12 (7th Cir.1982), for the proposition that in a contract negotiation duty of fair representation case, a union member's pursuit of internal union remedies can never afford complete relief. In Schultz, the defendant-company demanded in collective bargaining that it be released from a contract provision establishing a "normal" ratio between apprentices and journeymen machinists, which had been understood by the parties to require that the ratio be strictly maintained. The union agreed with the company, but instead of changing the language in the contract, the parties reached an understanding during negotiations that the provision could be construed to be precatory instead of mandatory. The plaintiff-worker eventually filed a grievance demanding placement in the apprenticeship program because the company no longer maintained the proper ratio. When the union refused to take the grievance to arbitration, the worker sued without exhausting intra-union appeals. We ruled that exhaustion would have been futile because neither the union nor the company represented that they would waive the timeliness requirements of the contractual grievance procedure, and because the union itself could not directly place Schultz in the apprenticeship program. 696 F.2d at 514. In the footnote cited by BRAC, we added that the disposition of the grievance was a foregone conclusion and then affirmed a directed verdict for the defendants on the merits
 The difference between Schultz and this case is two-fold. First, without discussing the continued validity of this one sentence in a footnote, our holding today makes clear that whether the pursuit of internal union remedies is or is not found to be futile in hindsight, it is not a determinative distinction. Second, the very facts of this case demonstrate why that distinction is too unclear to be determinative. In Schultz, the worker sought relief from a concession that the company had won in collective bargaining, and thus it was arguably unlikely that the company would have agreed to give it back if the union had pressed the matter. Here Frandsen sought to have the union negotiate seniority rights that the company had originally offered and that he was told the union had accepted. It was arguably reasonable for Frandsen to assume that the company was basically a stakeholder with respect to competing seniority claims of its employees and would acceded to BRAC's request if, by pursuing intra-union appeals, Frandsen could force the union to make that request. Frandsen's claim should not fail merely because he made the wrong, but a perfectly reasonable, assumption. Unions and employees are not "on notice" that exhaustion will never toll the statute of limitations for actions which complain of the negotiation of collective bargaining agreements because such procedures can never provide complete relief: and complete relief itself is not always necessary.
 
 
 [10]
 In Ranieri v. United Transportation Union, 743 F.2d 598 (7th Cir.1984), this court held, following DelCostello, that the six-month section 10(b) limit applied to a Railway Labor Act duty of fair representation claim by an employee against the union. 743 F.2d at 599. But the Supreme Court has held that a railroad employee's suit against his union for breach of its duty of fair representation is not subject to the normal requirement that administrative remedies be exhausted before resorting to the courts. Czosek v. O'Mara, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970). Without commenting on the continued validity of this language in light of Clayton and DelCostello, we hold that this rule does not apply to the intra-union remedies a railroad employee might have available. But see 23 Fed.Proc.L.Ed. Sec. 52:2016. The district court found no reason why the Supreme Court would require exhaustion of intra-union remedies in other labor contexts and not in the railroad context. We agree and therefore hold that the exhaustion of intra-union remedies by a railroad employee is governed by the same general principles set forth by the Supreme Court in other labor cases
 
 
 [11]
 The defendant railroad argues that Frandsen's claim should be dismissed because although he alleged collusion between the railroad and the union, in his deposition he denied any animosity between the union, the individual defendants, the railroad, and himself. See Dober v. Safeway Stores, 707 F.2d 292, 294-95 (7th Cir.1983). In addition, Frandsen said in his deposition:
 Q. "And you would have no way of knowing about any conspiracy that may have been hatched by the two of them, is that correct?"
 A. "Not right now, no."
 These allegations by the defendant fail because they ignore the procedural posture of this suit. Because it is on appeal after a summary judgment motion, Frandsen was denied an opportunity to depose the union and company officials and obtain discovery to determine the extent of the conspiracy. There is evidence in the record showing that BRAC was possibly motivated by the concerns of its larger constituent group that was already employed by MOPAC. Thus, there is a sufficient factual basis to support a claim of conspiracy.