Kathy E. EMERY, Plaintiff,

v.

**ALLIED PILOTS ASSOCIATION,**
Defendant.

CASE NO. 14–80518–CIV–HURLEY

United States District Court,
S.D. Florida.

Signed 11/09/2016

Kathy E. Emery, Miami, FL, pro se.

Darin M. Dalmat, James & Hoffman PC, Seattle, WA, Steven K. Hoffman, James & Hoffman PC, Washington, DC, Kathleen Marie Phillips, Phillips Richard & Rind, Miami, FL, for Defendant.

## ORDER GRANTING IN PART & DE-NYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGE-MENT [DE 93]

Daniel T. K. Hurley, United States District Judge

The major question at the summary judgment stage in this case is whether the defendant, Allied Pilots Ass'n ("the union"), has demonstrated a lack of evidence to prevent the plaintiff, a union member, from going forward on her claim that the union, in connection with a union-crafted arbitration dispute resolution process, breached its duty of fair representation. For the reasons indicated below, the court concludes that the union has satisfied its burden and is entitled to partial summary judgment.

## Factual Background

Plaintiff's employer, American Airlines ("American" or "the airline") declared bankruptcy in November 2011. As a result, the collective bargaining agreement between the airline and the pilots' union became unenforceable. Thereafter, a new agreement was negotiated; it took effect on January 1, 2013. In exchange for various concessions, the airline granted a 13.5% equity share in the company to the members of the pilots' union. Furthermore, the airline entrusted the union with the authority to distribute the equity among its members. The union implemented this authority by creating an equity distribution committee which drafted and promulgated an equity distribution plan. At the same time, the union amended its constitution and bylaws to authorize an arbitration dispute resolution process to handle challenges to the proposed equity distribution.

Plaintiff, Kathy E. Emery, filed a challenge under the union's arbitration process. Her work history shows that she began working for American in September, 1992 as a flight engineer on the Boeing 727. For the next ten years, her responsibilities included assisting captains and first officers with in-flight navigation matters. In 2002, American decided to discontinue its use of the 727s and to utilize Boeing's 737s. This change made the flight engineer's position obsolete and so Ms. Emery began training to qualify as a first officer on the 737. As part of this process, American required Ms. Emery to undergo a medical examination. She was diagnosed as suffering from depression, adjustment disorder and visual strabismus (a condition in which the eyes do not properly align with each other when focusing on an object). Ms. Emery then filed a claim with

the airline for disability benefits. American granted the request and designated her "long-term disabled." She began receiving disability benefits on March 18, 2003.[1]

On January 25, 2007, American terminated Ms. Emery's disability benefits on the ground that she failed to provide adequate documentation to show she continued to qualify for disability benefits. She challenged this decision by initiating proceedings in three different forums. She appealed through American's internal disability plan process, she filed an ERISA claim in federal court, and she filed a grievance under the union's collective bargaining agreement. (As will be explained, the union grievance has a significant role in this case.) Despite these efforts, she never regained disability benefits from the airline. The record also reflects that American Airlines never cleared Ms. Emery for active pilot duty after 2002. Moreover, she has not held an FAA medical certificate, which is required to fly a commercial airliner, since 2004.

An attribute of a pilot's employment with American Airlines is inclusion on the airlines' seniority list. In addition to evidencing employment, the list is used for multiple beneficial purposes.[2] The collective bargaining agreement indicated that, in order to fly for American, a pilot had to be on the seniority list. Further, the agreement indicated that if a pilot took a leave of absence due to sickness or injury for a period of five years of more, she was subject to automatic removal from the seniori-

ty list. American, however, appears to have applied this provision in a flexible, compassionate manner because the record indicates that the airline "did not always drop people right at the five-year mark." [DE 102–4 Myers Dep. 19]. In fact, Ms. Emery benefitted from this approach because her employment record shows that she continued to be listed on the seniority list until September 2009, well beyond the five-year cutoff.

The decision that sparked this case was the union's determination that Ms. Emery was not eligible to share in the equity distribution created by the 2013 collective bargaining agreement. She challenged this decision by participating in the union's arbitration dispute-resolution process and obtained a partially-successful result. The arbitrator found Ms. Emery eligible for an equity distribution from two of four available categories or "silos" and entered an award valued at approximately $16,000.

██ Count one in plaintiff's First Amended Complaint asserts that the union breached its duty of fair representation by creating and utilizing a mandatory arbitration dispute resolution process to review challenges to the proposed equity distribution. Before turning to the specifics of this claim, it is helpful to review the history and contours of this doctrine. "A union's duty of fair representation to its members is not set forth in any labor statute. Rather, it is the result of judicial interpretation of federal labor policies." *Frandsen v. Bhd. of Ry., Airline & S.S. Clerks,* 782 F.2d 674,

---

1. In addition to disability benefits received from American, she also received benefits from Defendant's disability income plan, under which she received a total of $ 345,600 paid in 96 monthly instalments beginning in April 2003. She also applied for social security disability benefits in 2005/2006 and began receiving these benefits in 2008. The disability benefits changed into regular social security benefits in 2012 when Plaintiff turned 60.

2. "Seniority is immensely valuable to pilots; greater seniority means better wages and working conditions. A pilot's position on a seniority list determines her rank, the aircraft she flies, and the control she maintains over her work schedule." *Addington v. US Airline Pilots Ass'n,* 791 F.3d 967, 980 (9th Cir. 2015)

678 (7th Cir. 1986). The duty stands "as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Vaca v. Sipes*, 386 U.S. 171, 182, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). "At its most rudimentary level, the union's duty of fair representation is a duty "to make an honest effort to serve the interests of all, ... without hostility to any." *Addington v. US Airline Pilots Ass'n*, 791 F.3d 967, 982 (9th Cir. 2015) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)). The Supreme Court restated the duty of fair representation in this fashion. "[T]he exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). "[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998). The burden to establish a breach of the [duty of fair representation] is "a substantial one." *Harris v. Schwerman Trucking Co.*, 668 F.2d 1204, 1206 (11th Cir. 1982). "[M]ere negligence is never sufficient to sustain a claim for breach of the [duty of fair representation]." *Roadway Exp., Inc. v. N.L.R.B.*, 427 Fed.Appx. 838, 841 (11th Cir. 2011).

Plaintiff asserts that the union violated its duty of fair representation in two ways. First, in a broadside attack, she contends that the union's arbitration dispute resolution process failed to comply with the Railway Labor Act's procedural

requirements for binding arbitration, *e.g.*, multiple arbitrators, etc. Thus, she says, requiring pilots to utilize the union's deficient process breached the duty of fair representation. Two faulty assumptions undercut this argument. First, is the assumption that the Railway Labor Act, 45 U.S.C. §§ 151–165, which by amendment applies to the airline industry, covers the plaintiff's dispute. It does not. "The Railway Labor Act establishes a mandatory procedure for resolving certain disputes between a ... *carrier and its employees*." *Frandsen, supra* at 685 (emphasis supplied). The Act is generally understood to apply to disputes between carriers and employees "over the meaning of an existing right or application of a collective bargaining agreement in a particular factual situation." *Ibid.* The dispute in this case, however, is between a union and one of its members and, therefore, is outside the ambit of the Railway Labor Act.

The second flaw in plaintiff's argument is the assumption that the union-crafted arbitration dispute resolution process is facially arbitrary or discriminatory. It is neither. Recall that upon being invested with the responsibility to allocate the equity proceeds among its members, the union amended its constitution and bylaws to add the following provision:

> In the event that the Association has discretion to distribute a lump sum payment (Lump Sum Payment"), which shall be defined by the Board in the Lump Sum Dispute Resolution Procedure, any pilot or group of pilots who wishes to challenge the distribution shall be required to exhaust the Lump Sum Dispute Resolution Procedure. No pilot or group of pilots may take any legal action against the Association with respect to any manner that could be addressed in the Lump Sum Dispute Resolution Procedure unless this particular

Procedure has been invoked and exhausted by the pilot or group of pilots.

The foregoing provision authorized a neutral arbitration dispute resolution process to achieve an acceptable resolution of challenges to the proposed equity distribution. It is a classic example of an internal or "intra-union" remedy. "[I]ntra-union remedies are the sole province of the union; they are designed to settle disputes between a union and its members. As such, intra-union remedies are distinct from the mechanisms specified by a collective bargaining agreement resolving disputes between the union and the employee." *Bell v. DaimlerChrysler, Corp.*, 547 F.3d 796, 804 (7th Cir. 2008).

The record in this case demonstrates that the arbitration dispute resolution process was transparent and fair. The union published extensive relevant information on its website. This included the general equity distribution documents, including the union's proposed Equity Distribution Plan, copies of relevant collective bargaining agreements, the union's Statement of Position with supporting declarations and exhibits, challenges by individual pilots along with motions, requests and responses, hearing transcripts with exhibits, and all of the arbitrator's orders.

The union selected Stephen Goldberg, a member of the National Academy of Arbitrators and a former professor of law at the Harvard and Northwestern University Law Schools to preside over the arbitration.[3] Pilots desiring to challenge their proposed equity allocations were required to file a written challenge, not exceeding ten pages. Provisions allowed for document requests and requests to compel witness testimony. The schedule called for a preliminary hearing to be followed by a final evidentiary hearing.

The plaintiff proved to be a knowledgeable participant in this process. She filed a written challenge, defeated a motion to dismiss, and obtained documents upon request. At the final hearing, she testified at length, cross-examined witnesses, and the submitted a posttrial brief. Equally noteworthy is the fact that she achieved a partial success, obtaining an award which she retains to this day. Thus, the court concludes, as a matter of law, that the union-crafted arbitration dispute resolution process was a legitimate intra-union remedy, which, on its face, was neither arbitrary nor discriminatory.

 Plaintiff next contends the union breached its duty of fair representation by advocating certain positions during the arbitration process. Paragraph 92 of the First Amended Complaint contains a laundry list of positions advanced by the union which the plaintiff contends demonstrate "dishonest, arbitrary and discriminatory" conduct. It is, of course, axiomatic that "a union breaches its duty of fair representation if its actions are either arbitrary, discriminatory, or in bad faith . . . ." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). "Conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation. This deferential standard for arbitrary conduct gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Beck v. United Food & Commercial Workers Union, Local 99*, 506 F.3d 874 (9th Cir. 2007)(quoting *Marquez v. Screen Actors Guild, Inc.*, 525

---

3. Plaintiff's memorandum in opposition to the motion for summary judgment questions the arbitrator's neutrality. No admissible evidence, however, was offered to support this contention.

U.S. 33, 45–46, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998) (internal quotations omitted)). "Determining whether a union's actions are arbitrary under this standard requires 'an objective inquiry.'" *Rupcich v. United Food & Commercial Workers Int'l Union, Local 881*, 833 F.3d 847, 854 (7th Cir.2016) (quoting *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003)).

▆▆▆ A union acts in a discriminatory manner when its conduct is "intentional, severe, and unrelated to legitimate union objectives." *Bondurant v. Air Line Pilots Ass'n, Int'l*, 679 F.3d 386, 393 (6th Cir. 2012). "To establish that the union's exercise of judgment was discriminatory, a plaintiff must adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Beck, supra* at 880 (quoting *Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 301, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971)(internal quotations omitted). In applying these standards, a court "will not substitute [its] judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call. That is why we require a plaintiff making out such a claim to prove: (1) that her position is not just as plausible as the union's, but to show that the union's position could eventually be deemed not even colorable, and (2) that she was actually harmed by the union's actions, that is, she must demonstrate the outcome would probably have been different but for the union's activities." *Rupcich v. United Food & Commercial Workers Int'l Union, Local 881*, 833 F.3d 847, 854 (7th Cir. 2016)(internal citations omitted).

▆▆▆ One must reject out of hand the notion that the union breached its duty of fair representation simply by advocating positions adverse to the plaintiff's economic interests. It is universally recognized that a union, in the context of union-employer negotiations, "must act in the general interest of its membership, and it may have to compromise on positions that will inevitably favor a majority of its members at the expense of other of its members." *Humphrey v. Moore*, 375 U.S. 335, 349–50, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). The same rule applies with equal force to intraunion disputes when a union acts to promote the general good of its membership.

▆▆▆ An thorough review of each of plaintiffs complaints leads the court to conclude that no reasonable trier of fact could find that one or more of the union's actions or positions breached the duty of fair representation. Every position advanced by the union—whether it ultimately proved to be right or wrong—was protected by the union's right to promote the perceived legitimate interests of its membership. Two examples suffice to demonstrate the infirmity that persists in every one of plaintiff's complaints. First, the plaintiff contends that the union violated its duty of fair representation when it argued to the arbitrator that she was ineligible to participate in the equity distribution because she had not been terminated for cause. By way of background, all "active" pilots were eligible to participate and, in addition, some pilots who had been terminated were also eligible. Plaintiff claimed she fell in this latter class because of the following language in the union's Approved Eligibility and Allocation Document:

> A pilot who has been terminated by the company as of January 1, 2013 but has not yet completed the grievance process will be considered an "active" pilot for this distribution.

All pilots meeting the requirements of this provision were entitled to a presumption that they would prevail in their grievance process.

Ms. Emery employed a "plain meaning" approach to the above provision, arguing that she was an "active" pilot entitled to participate in the distribution because (1) she had been terminated by the company as of January 1, 2013, and (2) had a pending grievance that had not been completed. The union, on the other hand, took a more nuanced approach, urging the arbitrator to interpret the provision to add a qualification. The union claimed that American acquiesced in the union's demand that pilots be given an ownership interest in the company to compensate working pilots for reductions in salaries and benefits to be experienced in the future because of the airline's bankruptcy. Therefore, the union argued that only those pilots who (1) had been *terminated for cause*, and (2) had not yet completed the grievance process (but at which, under the agreed presumption, they would prevail), should be eligible to participate in the equity distribution. Plaintiff Emery had not been terminated for cause and, thus, in the union's view was ineligible. However one might evaluate the union's position, it cannot be categorized as irrational or beyond the pale. Moreover, the fact that the arbitrator rejected the union's interpretation, finding the plaintiff entitled to a reduced portion of the equity proceeds, does not establish that the union's position was arbitrary or motivated by discriminatory intent.

■ A second, related example flows from the eligibility requirement that a pilot must have (1) filed a grievance and (2) not yet completed the grievance process. As noted, any pilot who met these two requirements was also afforded a presumption that she would prevail in the grievance process. At arbitration, both parties agreed that Ms. Emery had filed a grievance in 2007 and had not yet completed the grievance process. The union, however, consistent with its theory that the airline's grant of an ownership interest in the company was meant to compensate working pilots for losses or reductions to be experienced in the future, argued that Ms. Emery's grievance was primarily aimed at securing reinstatement of long-term disability benefits. In other words, the union suggested that the plaintiff, who was not a "working pilot" and had not been one since 2003, was not entitled to the same equity distribution afforded to pilots who had been terminated for cause and could be expected to rejoin the workforce. This is the argument that plaintiff contends violated the duty of fair representation. It should be noted that both parties possessed the relevant documents. There is no contention in this case that the union altered or withheld relevant documents. Thus the questions becomes whether the union, in arguing in favor of other pilots, breached it duty of fair representation to the plaintiff. The answer is "no." Under the standard set forth above, no reasonable trier of fact could find that the union's actions and arguments constituted a breach of the duty of fair representation. This holds true for each of the items listed in plaintiff's paragraph 92. Furthermore, aside from bald assertions, the plaintiff has failed to produce any admissible evidence suggesting a discriminatory animus. No reasonable trier of fact, viewing the record as developed, could find that the union acted for an impermissible purpose.

■ Plaintiff's second count asserts a violation of the Labor–Management Reporting and Disclosure Act, 29 U.S.C.A. § 411(a)(2). This act guarantees a union member's right to free speech and, under certain conditions, permits a union to restrict that speech by enacting "reasonable

rules." The parties agree that the Plaintiff is a member of the union,[4] that the union maintains a password-protected website which contains a forum called "Challenge and Response," and that some union members are allowed to post comments in the section of the website. The parties also agree that the plaintiff's access to the Challenge and Response forum was curtailed around April of 2014 on the ground that she had been administratively classified by the union as "MDD" (Medical Disability Dropped). This designation correlated with the airline's policy of removing a pilot from the seniority list after she had been on disability leave for a period in excess of five years.

After reviewing the portions of the record that have been presented to the court on summary judgment and having considered the arguments by the parties, the court has concluded that the defendant union has failed to carry its burden of demonstrating an absence of a genuine issue of material fact so as to justify summary judgment on this count. Therefore, the court will deny the defendant's motion for summary judgment on this count.

Accordingly, it is **ORDERED and ADJUDGED:**

1. Defendant union's motion for summary judgment on plaintiff s claim for breach of the duty of fair representation is **GRANTED.**

2. Defendant union's motion for summary judgment on plaintiff s claim for violation of the Labor–Management Reporting and Disclosure Act is **DENIED.**

4. The union's constitution and bylaws establish five categories of membership: active, inactive, retired, apprentice, and honorary. To qualify for active membership a pilot must be

**DONE and SIGNED** in Chambers at West Palm Beach, Florida, this 9th day of November, 2016.

accruing seniority, furloughed, or be on a leave of absence. A pilot automatically is transferred from active to inactive status after the expiration of 12 months of sick leave.