Norma ARRIAGA–ZAYAS, et al.,
Plaintiffs, Appellants,

v.

INTERNATIONAL LADIES' GARMENT WORKERS' UNION—PUERTO RICO COUNCIL, etc., et al., Defendants, Appellees.

No. 87–1327.

United States Court of Appeals,
First Circuit.

Heard Nov. 4, 1987.
Decided Dec. 10, 1987.

Eugenio G. Delamadrid–Gautier, with whom Pedro Saade–Llorens, Puerto Rico Legal Services Corp., was on brief, for plaintiffs, appellants.

Carl Schuster with whom McConnell Valdes Kelley Sifre Griggs & Ruiz–Suria, Hato Rey, P.R., was on brief, for defendant, appellee Splendorform International, Inc.

Seth Kupferberg with whom Max Zimny, New York City, was on brief, for defendant, appellee Intern. Ladies' Garment Workers' Union.

Before COFFIN, BOWNES and SELYA, Circuit Judges.

SELYA, Circuit Judge.

In plaintiffs' judgment, Splendorform International, Inc. (Splendorform), a lingerie manufacturer, made a slip when it laid off some ninety sewing machine operators incident to a reorganization in 1984. At a much later date, thirty-eight of these disaffected former employees brought suit against both their union, the International Ladies' Garment Workers' Union–Puerto Rico Council (ILGWU), and their quondam employer, Splendorform, in federal district court. The action comprised a classic hybrid § 301/unfair representation amalgam; the combination claim asserted that, on the one hand, plaintiffs' employer had breached § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, by violating a collective bargaining agreement, and that, on the second hand, their union had ignored the duty of fair representation implied under the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.*, with regard to the company's breach of contract. *See generally DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 163–66 & nn. 14–16, 103 S.Ct. 2281, 2289–92 & nn. 14–16, 76 L.Ed.2d 476 (1983) (discussing characteristics of § 301/unfair representation hybrids). The district court granted summary judgment in favor of both defendants. *Arriaga v. ILGWU*, 656 F.Supp. 309 (D.P.R.1987). This appeal followed.

## I. FOUNDATION

The relevant factual and procedural background has been set out authoritatively by the district court, *id.* at 310–11, and we need not restitch that fabric in any great detail. It suffices to say that, when the plaintiffs were discharged by Splendorform, a collective bargaining agreement was in force and the ILGWU was the exclusive bargaining representative for the cashiered clique. In the chronology which ensued, the four dates which follow—none disputed—have decretory significance:

1. October 22, 1984—Splendorform drops the workers.
2. March 21, 1985—plaintiffs, through counsel, file a charge with the Puerto Rico Labor Relations Board (PRLRB) alleging that Splendorform "violated ... the current collective bargaining agreement ... when it laid off forty-seven (47) employees ... in violation of the seniority clause."[1]
3. June 3, 1985—plaintiffs, through counsel, file an "informative motion" with the PRLRB amending the charge (a) to increase the body count to eighty-six (*see supra* n. 1), (b) to pad the complaint previously levied against the company, and (c) to add the ILGWU as a respondent on the basis that, despite "pretensions" to the contrary, the union "did not fulfill its duty of fair and adequate representation" in respect to the plight of the sewing machine operators.
4. July 23, 1986—plaintiffs file the instant action in the United States District Court for the District of Puerto Rico.

Though of lesser importance overall, we remark that from July 1985 until early 1986 arbitration proceedings were conducted between the union and the employer. Eventually, a settlement was reached. *See Arriaga*, 656 F.Supp. at 311. We note, too, that the PRLRB dismissed all of plaintiffs' charges on October 16, 1985. A month later, the Puerto Rico Board denied a peti-

---

**1.** In their June 3, 1985 filing with the PRLRB, appellants raised the body count from forty-seven to eighty-six. The exact number of affected employees remains somewhat obscure. In their briefs to this court, the parties allude to some indeterminate number of lay-offs ranging from eighty-five to ninety. Since the precise figure is of no consequence for the purposes at hand, we have taken the latter total as being approximately correct.

tion for reconsideration. At about the same time, plaintiffs filed charges against the ILGWU before the National Labor Relations Board (NLRB). That petition was summarily dismissed on November 29, 1985.

## II. DISCUSSION

Summary judgment is, of course, proper so long as "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Given the sheer chronicity of the four critical events listed above—the timing of which was conclusively buttoned down—we think that *brevis* disposition was altogether appropriate in this instance. Plaintiffs' union suit was too late a bloomer.

■ In *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. at 169–72, 103 S.Ct. at 2293–95, the Court held that an adscititious six month statute of limitations, derived from § 10(b) of the LMRA, applied to hybrid § 301/fair representations actions such as the one at bar. The limitations clock is activated by knowledge, actual or constructive; it begins to tick when the challenged conduct comes to light. "A cause of action in a hybrid Section 301/fair representation suit arises when the plaintiff knows, or reasonably should know, of the acts constituting the union's alleged wrongdoing." *Graham v. Bay State Gas Co.*, 779 F.2d 93, 94 (1st Cir.1985). *Accord Clift v. International Union, United Automobile, Aerospace &*

*Agricultural Implement Workers of America (UAW)*, 818 F.2d 623, 629 (7th Cir.1987) (per curiam); *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 304 (7th Cir.1983), *cert. denied*, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984); *Santos v. District Council, Etc., United Brotherhood of Carpenters and Joiners*, 619 F.2d 963, 968–69 (2d Cir.1980).

■ In this case, the plaintiffs' own filings place them snugly within the tightest of corsets. They plainly knew of the ILGWU's purported wrongdoing no later than June 3, 1985—for on that date they filed an elaborate "informative motion" with the PRLRB, citing style and size as to the ill-fitting ways of the union. They claimed then to have lifted the petticoat of "pretensions" and to have glimpsed the perfidy which underlay it. Having spied the wrongdoing, the aggrieved workers were bound to act upon this knowledge in a timely fashion, that is, to sue within the six month limitations period or forever hold their peace.[2] By neglecting to file a complaint for well over a year thereafter, they are undone.

■ The appellants argue that the pendency of the charges which they instituted before the PRLRB and the NLRB, respectively, served to impede the march of time. The Court, however, has made it crystal clear that an employee whose interests have been slighted by his union can simultaneously tread both administrative and judicial paths. *Vaca v. Sipes*, 386 U.S. 171, 185–86, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967). Accordingly, it would make precious little sense, given the policy considerations which undergird *DelCostello*,[3]

---

**2.** There is no cognizable question in this case as to when the union's supposed foibles took place. Appellants' counsel conceded at oral argument that the instant suit does not challenge the handling or the outcome of the arbitration hearings, or the fairness of the settlement reached therein. Rather, the plaintiffs' guns are trained exclusively on the firings which occurred in October 1984 and on the sluggishness of the ILGWU's reaction thereto. We have no need to pass upon appellees' contention that appellants' knowledge of the relevant aspects of the situation was complete *before* June 3, 1985. Plainly, the plaintiffs, no later than June 3, 1985, "could first have successfully maintained a suit based

on that cause of action." *Demars v. General Dynamics Corp.*, 779 F.2d 95, 97 (1st Cir.1985) (quoting *Bell v. Aerodex, Inc.*, 473 F.2d 869, 873 (5th Cir.1973)). Given the lateness of their suit, it is unnecessary to backtrack further.

**3.** The *DelCostello* Court, in choosing a limitation period, gave great weight to the need for uniformity and to the wisdom of striking a tenable balance between important but competing concerns. *DelCostello*, 462 U.S. at 171, 103 S.Ct. at 2294. That balance implicated "the search for equipoise between the national interest in stability of bargaining and in the expeditious and

to put so commonplace a stumbling block in the way of the six month statutory period. The Court, after all, has historically been reluctant to invoke tolling in circumstances where a claimant rides parallel horses in search of relief. *See International Union of Electrical, Radio and Machine Workers, Local 790 v. Robbins & Myers, Inc.,* 429 U.S. 229, 236–40, 97 S.Ct. 441, 446–49, 50 L.Ed.2d 427 (1976) (collectively-bargained grievance procedures as juxtaposed with Title VII); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 460–62, 95 S.Ct. 1716, 1720–21, 44 L.Ed.2d 295 (1975) (Title VII administrative procedures juxtaposed with 42 U.S.C. § 1981); *cf. De Arroyo v. Sindicato de Trabajadores Packinghouse, AFL–CIO,* 425 F.2d 281, 287 (1st Cir.) (describing jurisdiction of NLRB and district courts vis-a-vis § 301 claims as "concurrent"), *cert. denied,* 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970).

■ The proof of the pudding is in the caselaw. It has consentiently been held that a filing with the NLRB does not prevent the statute of limitations from accruing on a fair representation claim. *E.g., Kolomick v. United Steelworkers of America, District 8, AFL–CIO,* 762 F.2d 354, 355–57 (4th Cir.1985); *Aarsvold v. Greyhound Lines, Inc.,* 724 F.2d 72, 73 (8th Cir.1983) (per curiam), *cert. denied,* 467 U.S. 1253, 104 S.Ct. 3538, 82 L.Ed.2d 842 (1984). Although we had previously declined to speak on this precise question, *see McNutt v. Airco Industrial Gases Division,* 687 F.2d 539, 543 (1st Cir.1982), we do so today. We rule that the filing of an unfair labor practice charge with the NLRB does not toll the statute of limitations on a hybrid § 301/fair representation action arising out of the same nucleus of operative fact.

The PRLRB proceedings stand on no higher ground. As with the NLRB, the federal courts and the Puerto Rico Board share certain areas of concurrent jurisdiction. *See Volkswagen de Puerto Rico, Inc. v. PRLRB,* 454 F.2d 38, 45 (1st Cir. 1972). Though they may be directed to many of the same uplifting ends, however, the proceedings and remedies available before the Puerto Rico Board and in the federal district courts remain separate, distinct, and independent. Parties cannot be permitted to play one forum off against the other, jockeying for tactical advantage. The district court could see no reason why, for tolling purposes, PRLRB filings should be treated any differently from NLRB filings. *Arriaga,* 656 F.Supp. at 311. Nor do we. The pendency of proceedings before the Puerto Rico Board did not stop or slow the limitations clock in this hybrid § 301/fair representation case. *Accord Estades v. Harry M. Stevens, Inc.,* 593 F.Supp. 778, 782–83 (D.P.R.1984).

■ By much the same token, the arbitration proceedings in which the union and the company became enmeshed during the latter half of 1985 and early 1986 had no genuine bearing on the timeliness of plaintiffs' suit. Assuming *arguendo* that the arbitration which occurred was contractually required by the collective bargaining pact and involved the same general topic as the suit—matters which are far from clear —the plaintiffs were not obliged to exhaust either the grievance protocol or any internal union appeals procedures before prosecuting their hybrid § 301/fair representation action in the courts. *See DelCostello,* 462 U.S. at 164, 103 S.Ct. at 2290; *Clayton v. International Union, United Automobile, Aerospace, & Agricultural Implement Workers,* 451 U.S. 679, 685, 101 S.Ct.

certain resolution of labor disputes, on the one hand, and the similar but more particularized interest of all parties to a given dispute (employer, employee and union) in not only those considerations but in individualized rights and in the availability of judicial review designed to insure fairness of results without undue disruption of the workplace, the collective bargaining process or the protectable rights of the parties themselves, on the other hand...." *Linder v.*

Berge, 567 F.Supp. 913, 916 (D.R.I.1983), *aff'd,* 739 F.2d 686 (1st Cir.1984). There is a salient temporal dimension involved in the calibration of these scales. Accordingly, *DelCostello* should be read as encouraging "the relatively rapid final resolution of labor disputes." *Graves v. Smith's Transfer Corp.,* 736 F.2d 819, 821 (1st Cir.1984). Such aims would plainly be disserved by adoption of the tolling rule which appellants advance.

2088, 2093, 68 L.Ed.2d 538 (1981).[4] In any event, appellants believed they had no fair access to the grievance system (because of the ILGWU's perceived unwillingness to help them) and the agreements in force at the time appellants were discharged did not command exhaustion of internal union procedures.

In a situation like this—where appellants contend that the union, rather than taking up the cudgels on their behalf, played pantywaist—it would be a mockery to force the plaintiffs to go through an arbitration process with the ILGWU as their champion. *Cf. Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976) (union's dereliction of fair representation duty "relieves the employee of an express or implied requirement that disputes be settled through contractual grievance procedures"). It mocks reality no less to argue that these disgruntled workers had the right to pin the tail of the arbitration proceedings onto their hybrid case in order to extend the applicable limitations period. The mere possibility of some mutually-acceptable nonjudicial enforcement was far too insubstantial to excuse the delay.

We need not consider whether, or to what extent, the doctrine of equitable tolling can be harmonized with the message of *DelCostello.* The long and the short of it is that these plaintiffs have offered no hint of any *special* circumstances which might invoke such a saving principle. They believed from the first that their lay-offs were impermissible; they realized soon thereafter that the union was oblivious to their interests; they were represented by top-drawer counsel early on; they garnered enough information by the following spring to file exegetic accounts with the PRLRB detailing the perceived shortcomings of both the company and the ILGWU. The challenged conduct had occurred and had been laid bare to plaintiffs' view by June 3,

1985 at the outside. *See supra* n. 2. Under these circumstances, the failure to sue within six months after June of 1985 was inexcusable. The law required considerably more bustle than was displayed.

## III. CONCLUSION

We need go no further. There is no genuine issue as to any material fact. The district court was plainly right in granting summary judgment in favor of the appellees. Whatever slips may have been made in the course of the company reorganization, none was made in the court below.

*Affirmed.*

---

4. In this respect—one of several—a hybrid § 301/fair representation suit differs from a "straight" § 301 action (*i.e.,* a suit which does not allege any complicity on the part of the union) brought by a worker solely against his or her employer. *See DelCostello,* 462 U.S. at 163,

103 S.Ct. at 2290; *Vaca v. Sipes,* 386 U.S. at 184–86, 87 S.Ct. at 913–14. Consequently, not only tolling principles but the very force of a contractual grievance scheme may be considerably different in such a matter.