**Robert MALLACK, et al., Plaintiffs,**

**v.**

**LOCAL 805, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA; Panasonic Company; Panasonic Industrial Company; Matsushita Engineering and Service Company; and Matsushita Electric Corporation of America, Defendants.**

**No. 87 CIV. 5966 (PKL).**

United States District Court,
S.D. New York.

July 29, 1988.

 

Clifton & Schwartz, New York City (Daniel E. Clifton, Arthur Z. Schwartz, Louie Nikolaidis, of counsel), for plaintiffs.

Richard M. Greenspan, P.C., White Plains, N.Y. (Richard M. Greenspan, of counsel), for defendant Local 805.

Weil, Gotshal & Manges, New York City (Mark A. Jacoby, of counsel), for defendants Panasonic and Matsushita.

## OPINION & ORDER

LEISURE, District Judge:

This case involves claims of several laid-off employees of Panasonic Company, a division of Matsushita Electric Corporation of America ("the Employer" or "Panasonic") who worked in the consumer parts and service department of Panasonic's Secaucus, New Jersey facility. Plaintiffs have sued their representative union, Local 805, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Local 805" or "the Union") under sections 101(a)(1) and (2) of the Labor Management Reporting and Disclosure Act, (LMRDA), 29 U.S.C. § 411(a)(1) and (2) (1982), for violations of the plaintiffs' rights to vote and to free speech, for breaches of the Union's duty to provide fair representation of the employees, and for fraud.

The plaintiffs have also sued the Employer pursuant to section 301 of the Labor Management Relations Act of 1947, (LMRA), 29 U.S.C. § 185 (1982), for violations of the collective bargaining agreement between Local 805 and the Employer. The case thus constitutes a "hybrid section 301/duty of fair representation case."

## I. BACKGROUND

The claims arise out of the process of collective negotiation and ratification of a contract that took place between November 1984 and February 1985, and from the agreement between Local 805 and the Employer that resulted from this negotiation, which was finally approved and enacted in February 1985.

The old collective bargaining agreement between Local 805 and the employer was

set to expire on January 31, 1985. In order to renegotiate an agreement, a negotiating committee was established in November 1984. Several of the plaintiffs here, including Robert Mallack, Harvey Keeser and George Wegman were members of that committee. Their primary concern in the renegotiation was for the creation or recognition in the new contract of employees' rights to bump less senior workers within their job specification, (for example, clerical or warehouse), in departments other than that to which they were assigned, as an alternative to being laid off. The workers already had the right to bump less senior workers within their own departments.

The Union at first resisted the promotion of this right, but after one newly proposed contract that did not contain the new seniority rights was soundly defeated by the bargaining team representing plaintiffs, the Union apparently began to take the idea more seriously.

In February of 1985, the Union proposed a second contract to the workers. John Glanzman ("Glanzman"), the Union representative, asserted that the language of the contract had been changed so as to grant the desired right to bump interdepartmentally. The workers were dubious about the changes, and asked questions about exactly what had been done. Glanzman was not responsive to all the questions, but repeatedly assured the employees that it was now the Union's position on the contract's terms that seniority in job specification, and not just in a department, was determinative of one's vulnerability to layoff and chance for recall or reassignment; the most senior, of course, would be the last to be laid off, and the first to be recalled or reassigned.

The Union did not provide a copy of the revised contract to the workers before the vote on its approval; however, enough workers were satisfied with the new contract as described by the Union representative to approve it overwhelmingly. Eventually, copies of the new agreement were made available to all concerned workers by at least April 1985, and several of the plaintiffs here read the contract at that time, and asked questions about its terms. Glanzman again asserted that it was the Union's position that seniority in job specification and not department was determinative of layoff and recall matters. Although they had the opportunity, plaintiffs did not pursue their questions further, and accepted this interpretation of the agreement at that time.

When Panasonic shut down the parts and service department in Secaucus on February 19, 1987, plaintiffs were not reassigned to other departments, nor were they allowed to bump less senior workers of their job specification in other departments. They submitted a grievance to the Union on this matter, and the Union communicated this to the Employer, asserting the employees' rights to bump interdepartmentally under the collective bargaining agreement. The Employer disagreed, and the issue was submitted to binding arbitration, in which all concerned parties were allowed to voice their opinions, including several of the plaintiffs here.

The arbitrator ruled that the contract did not provide the right to bump interdepartmentally, but that seniority rights were in fact limited to within the department to which the employee was assigned.

After the arbitrator had interpreted the contract, two grievances were filed with the Union involving plaintiffs here. The first was by Damie Jackson, who had been reassigned by Panasonic, but at a lower rate of pay; the second by twenty other employees, who wished to protest the hiring of new workers into positions in other departments that the laid-off employees were qualified to do. The Union, relying on the definitive interpretation of the agreement by the arbitrator, refused to process these two grievances.

As a result of these occurrences, plaintiffs filed this action on August 19, 1987. Defendants have moved to dismiss the complaint, or in the alternative, for summary judgment, and for sanctions under Rule 11 of the Federal Rules of Civil Procedure. Because the parties submitted to the Court matters outside the pleadings, and the par-

ties are on notice, the case will be treated as one for summary judgment.

## II. THE APPLICABLE STATUTE OF LIMITATIONS

■ The proper statute of limitations for a "hybrid section 301/duty of fair representation" case is the six month statutory period borrowed from section 10(b) of the National Labor Relations Act, (NLRA), 29 U.S.C. § 160(b) (1982). *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Arriaga–Zayas v. International Ladies' Garment Workers' Union*, 835 F.2d 11 (1st Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 2016, 100 L.Ed.2d 604 (1988); *Gentilviso v. N.Y. Public Library*, 589 F.Supp. 587 (S.D.N.Y.1984). Insofar as plaintiffs' claim was filed more than two years after the events from which it arose, this Court finds that plaintiffs' claims are time-barred.

The hybrid section 301/duty of fair representation suit represents two causes of actions:

> The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. "Yet the two claims are inextricably interdependent."

*DelCostello*, 462 U.S. at 164–65, 103 S.Ct. at 2290–91 (citing *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 66–67, 101 S.Ct. 1559, 1565–66, 67 L.Ed.2d 732 (1981) (Stewart, J. concurring in judgment)); *see also, Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). In order to prevail against either the Employer or the Union, the plaintiffs must not only show that their layoff and failure to be reassigned or recalled was contrary to the terms of the collective bargaining agreement, but also that the Union has breached its duty to fairly represent the employees in formulating that collective agreement, and in processing the grievances that arose under it. "The suit is

thus not a straight-forward breach-of-contract suit under § 301 ... but a hybrid § 301/fair representation claim, amounting to 'a direct challenge to the private settlement of disputes under [the collective-bargaining agreement].'" *DelCostello*, 462 U.S. at 165, 103 S.Ct. at 2291 (citing *Mitchell*, 451 U.S. at 66, 101 S.Ct. at 1566 (Stewart, J. concurring in judgment)).

The six month statute of limitations is, of course, not the only one used in labor actions. The Second Circuit has made it clear that the reach of *DelCostello* is strictly limited to the "hybrid section 301/duty of fair representation" case, *Monarch Long Beach Corp. v. Soft Drink Workers, Local 812*, 762 F.2d 228 (2d Cir.), *cert. denied*, 474 U.S. 1020, 106 S.Ct. 569, 88 L.Ed.2d 554 (1985); *Rodonich v. House Wreckers Union Local 95*, 817 F.2d 967 (2d Cir.1987), and that is precisely the case here. These hybrid suits "involve an immediate and direct impact on labor-management relations." *See Monarch*, 762 F.2d at 231. The six month statutory period for charges of unfair labor practices provided in section 10(b) of the NLRA

> established a limitations period attuned to what it viewed as the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective bargaining system. That is precisely the balance at issue in this case. The employee's interest in setting aside the "final and binding" determination of a grievance through the method established by the collective-bargaining agreement unquestionably implicates "those consensual processes that federal labor law is designed to promote—the formation of the ... agreement and the private settlement of disputes under it."

*DelCostello*, 462 U.S. at 171, 103 S.Ct. at 2294 (citing *Mitchell*, 451 U.S. at 70, 101 S.Ct. at 1568 (Stewart, J. concurring in judgment)).

The instant claim would definitely call into question the processes of collective bargaining carried on between Local 805

and the Employer, as well as directly call into question the agreement there produced. Plaintiffs were well aware of the bargaining going on through their contacts with the negotiating team, and had the opportunity to read the finalized contract by at least April 1985. However, they chose to wait until August of 1987 to file the present action, after a layoff of the plaintiffs and a determination by an independent arbitrator that plaintiffs and the other employees of their department did not have the right to bump other, less senior workers in other departments of Panasonic, contrary to the assertions of their Union.

Accordingly, cases cited by plaintiffs' counsel are not on point. Judge Haight's opinion in *McAvinue v. Gallagher*, No. 85 Civ. 5922, slip op. at 2 (S.D.N.Y. Nov. 4, 1987) on which plaintiffs rely, found the six month statute inapplicable because the employer was not a party to the action and the action did "not in any meaningful manner impact on labor-management relations." In this action, however, the Employer is a party to the suit and the action does impact on the collective bargaining relationship.

█ The six month statute of limitations period applied in *DelCostello* to hybrid section 301/duty of fair representation claims bars their claim. Plaintiffs next contend that the statute of limitations begins to run only " 'when plaintiffs knew or reasonably should have known that such a breach had occurred....' " Plaintiffs' Memorandum of Law at 36 (quoting *Santos v. Carpenters District Council*, 619 F.2d 963, 969 (2d Cir.1980)). But it is undisputed that sever-

al of the plaintiffs, including Mallack, saw a copy of the contract approximately two months after it was ratified. Affidavit of Robert Mallack, sworn to on November 18, 1987, ¶ 17. Because plaintiffs were aware of the basis of this lawsuit two years ago, this argument is unavailing.

## III. PLAINTIFFS' FRAUD CLAIM

█ Plaintiffs' second cause of action asserts a claim of fraud under state law against the Union, and plaintiffs wish the Court to exercise pendent jurisdiction over the claim. Pendent jurisdiction refers to the "power of a federal court, once it acquires jurisdiction over a case and controversy properly before it, to adjudicate other claims sufficiently closely related to the main claim even though there is no independent basis for subject matter jurisdiction over the related claims." *Baylis v. Marriott Corp.*, 843 F.2d 658, 663 (2d Cir. 1988). But "[w]hen all bases for federal jurisdiction have been eliminated from a case so that only the pendent state claims remain, the federal court should ordinarily dismiss the state claims." *Id.* at 665 (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). Because the federal claims are time barred, the Court finds that it should not exercise its discretion to hear the pendent state claims.[1]

## IV. DEFENDANTS' RULE 11 MOTION

█ Defendants have moved for the imposition of sanctions on plaintiffs pursuant to Rule 11 of the Federal Rules of Civil Procedure.[2] The standard for the imposi-

---

1. The defendants maintain that state law is preempted in this area by the federal labor law. The court need not reach this issue in light of the discussion above.

2. Rule 11 provides in pertinent part:
   Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.
   
   \* \* \* \* \* \*
   
   The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge,

information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

\* \* \* \* \* \*

If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party the amount of the reasonable expenses

tion of sanctions under Rule 11 in this Circuit was clearly set forth in *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985), in which the Second Circuit stated: "where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated." *Id.* at 254.

This standard for the imposition of sanctions is a very stringent one, and the Second Circuit has cautioned district courts to "resolve all doubts in favor of the signer." *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir.1986), *cert. denied, sub nom. County of Suffolk v. Graseck*, — U.S. —, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). Based on this standard, the Court cannot say that the imposition of sanctions pursuant to Rule 11 is warranted. The question of the applicable statute of limitations in labor actions has plagued the federal courts, and it is not entirely specious to argue that the law in the area may be subject to extension. Plaintiffs' counsel has made an argument that the three year statute of limitations should apply. Although the Court does not find that argument persuasive, it was not patently meritless. Nor are plaintiffs' underlying claims entirely without merit. Accordingly, the motions for sanctions under Rule 11 are denied.

## IV. CONCLUSION

Therefore, for the reasons stated above, defendants' motions for summary judgment are granted. Defendants' motions for the imposition of sanctions pursuant to Rule 11 are denied. The Court orders that the complaint be dismissed in its entirety. SO ORDERED.

incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.