**Arnold L. JAMES, Plaintiff**

v.

**GEORGIA–PACIFIC CORPORATION, et al., Defendants**

**No. Civ. 97–0002–B.**

United States District Court,
D. Maine.

Dec. 5, 1997.

Frank McGuire, Rudman & Winchell, Bangor, ME, for plaintiff.

R. Lindsay Marshall, Alston & Bird, Atlanta, GA, Charles Harvey, Jr., Harvey & Frank, Portland, ME, Gary L. Melampy, Atlanta, GA, for Defendant Georgia–Pacific.

Jeffrey Neil Young, McTeague, Higbee, MacAdam, Case, Watson & Cohen, Topsham, ME, for Defendant Local 2400.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiff, Arnold L. James, brings this action against Defendants, Georgia–Pacific Corporation ("Georgia–Pacific") and Local 2400 of the United Brotherhood of Carpenters and Joiners ("Local 2400" or "the Union"). Plaintiff, an employee of Georgia–Pacific and a member of Local 2400, alleges that Georgia–Pacific and Local 2400 breached a Collective Bargaining Agreement ("CBA") governing the parties and that Local 2400 breached its duty of fair representation. Specifically, Plaintiff contends that Defendants breached the CBA by denying him seniority and refusing him access to an arbitration dispute resolution procedure provided for in the CBA. Plaintiff also contends that Local 2400 breached its duty of fair representation by failing to support his grievance and engaging in a campaign of harassment against him in retaliation for his attempts to exercise his seniority and grievance rights. Plaintiff seeks damages and declaratory relief. Defendants Georgia–Pacific and Local 2400, in separate motions, have moved for summary judgment. For the following reasons, the Court GRANTS summary judgment for Defendants.

## SUMMARY JUDGMENT

Summary judgment is appropriate in the absence of a genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993). For the purposes of summary judgment the Court views the record in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995).

## BACKGROUND

Defendant Georgia–Pacific is a Georgia corporation that operates a paper mill in Woodland, Maine. Defendant Local 2400 is a labor organization that represents a unit of forty millwright employees, including Plaintiff, at the Georgia–Pacific Woodland mill. Plaintiff began working for Defendant Georgia–Pacific at its Woodland mill in 1964 as a stock tester. In 1968, Plaintiff was transferred to a maintenance position in the millwright bargaining unit and subsequently joined Local 2400. Plaintiff remained a member of Local 2400 until 1976 when he accepted a salaried position. In 1992, Plaintiff was terminated from his employment at Georgia–Pacific and he subsequently sued for wrongful termination. Pl.'s Statement of Material Facts ("Pl.'s SOF") ¶ 9. Plaintiff and Defendant Georgia–Pacific reached a settle-

ment agreement in that case whereby Plaintiff was rehired in the millwright bargaining unit in September, 1995. James Depo.Ex. 1. In that settlement agreement, Georgia–Pacific agreed to grant Plaintiff company seniority from the date of his original employment in 1964. *Id.* The settlement agreement also noted:

> JAMES has requested bargaining unit seniority from the period of 1964 to 1976 when JAMES was previously employed in the bargaining unit. JAMES acknowledges that G–P cannot unilaterally agree to his bargaining unit. G–P agrees to use its best efforts in good faith to obtain this seniority with LOCAL 2400 and to abide by LOCAL 2400's position on JAMES' bargaining unit seniority.

*Id.* The parties agreed that Plaintiff's employment would be governed by the CBA between Georgia–Pacific and Local 2400, unless specifically modified by the settlement agreement. *Id.* Plaintiff understood at the signing of the settlement agreement that, pursuant to the terms of the CBA, Defendant Georgia–Pacific could not grant him bargaining seniority for the period of 1968–1976 without the Union's agreement. James Depo. at 24.

Plaintiff returned to work on September 11, 1995, and shortly thereafter approached Clayton Blake, president of Local 2400, requesting that the question of Plaintiff's seniority be put on the agenda for the next Union meeting. *Id.* At Plaintiff's request the issue was addressed by the Union on September 20, 1995. Pl.'s SOF ¶ 24. Plaintiff asserts that at that meeting "there was very little discussion of the James seniority issue," the Local 2400 officers did not explain the provisions of the CBA, and the "membership was very hostile to the request." *Id.* at ¶ 26. James' seniority request, if granted, would have provided him with additional overtime opportunities, more favorable assignments, and a reduced risk of layoff, all to the disadvantage of at least thirteen other members of the Union. *Id.* at ¶¶ 8, 25. At least six of the nineteen Union members present at the September 20, 1995, meeting would have been bypassed by Plaintiff had his seniority request been granted. *Id.* at ¶ 26. The Un-

ion, by majority vote, rejected Plaintiff's request. James Depo. Ex. 21.

After the vote, Plaintiff asked Blake "what the next step was." Pl.'s SOF ¶ 27. In response to Plaintiff's concerns, Blake convened a special meeting of the Union on October 4, 1995, to again discuss Plaintiff's seniority request. James Depo. at 219. According to Plaintiff, the matter was discussed during the hour-long meeting but a second vote on the issue was not taken. *Id.* at 220. According to the minutes of that meeting, Plaintiff presented his argument that the CBA permitted reinstatement to his prior seniority, and members of the Union discussed it thoroughly, informally deciding to seek the assistance of the United Brotherhood of Carpenters and Joiners of America ("the International"). *Id.* at Ex. 22. Plaintiff and Local 2400 agreed that Plaintiff would write a letter to the International seeking resolution of Plaintiff's seniority dispute. Pl.'s SOF ¶ 28. The International replied in writing, declining to conclusively resolve the issue but providing the Union with legal advice on different options available to it, including the suggestion that if certain procedures were complied with Plaintiff's request could legally be denied. James Depo. Ex. 23. Several weeks later, on January 29, 1996, Union president Blake notified Plaintiff in writing that Local 2400 had denied Plaintiff's seniority request. *Id.* at Ex. 24.

Plaintiff then took steps in early February, 1996, to initiate a company grievance process established by the CBA. Pl.'s SOF ¶ 30. The CBA permits employees to file grievances "arising under the CBA" which are taken up at a "first step" by the authorized representative of Local 2400 and the department head, who must reply in writing to the grievance. James Depo.Ex. 8 at § 27(CBA). The CBA provides that, "if the Local Union is not satisfied with the disposition of the grievance, it shall file within five (5) working days, a written request for the second step." *Id.* If a second step is requested by the Union, and if an adjustment satisfactory to both parties is not reached, the CBA requires that the dispute be referred to binding arbitration. *Id.* Both Georgia–Pacific and Local 2400 have interpreted CBA to require Union approval

before a grievance, initially considered by Georgia–Pacific at the first step, can be appealed to the second step. Greenlaw Depo. at 139.

Around the same time, Blake agreed to look into the possibility of bringing in an impartial third party from the International to resolve Plaintiff's claim, as an alternative to the CBA grievance procedure. Pl.'s SOF ¶ 32. Plaintiff's attorney and a representative for the International subsequently corresponded and agreed on drafts of an Agreement to Resolve Seniority Issue, under which the dispute would be submitted to Ed Durkin, the director of special programs for the International. Id. at ¶ 33. At a meeting on February 22, 1996, the Union discussed sending the dispute to Durkin for resolution and subsequently voted to reject Plaintiff's request. James Depo.Ex. 28 (Union Minutes). Plaintiff and the International then presented a revised proposal at another special meeting on February 29, 1996, which was likewise rejected by majority vote. Id. at Ex. 30 (Union Minutes). At that same meeting Union members also voted not to endorse Plaintiff's CBA grievance. Pl.'s Decl. ¶ 21. Soon thereafter, on either February 29 or March 1, 1996, Blake informed Plaintiff that he would not sign Plaintiff's grievance on behalf of the Union. James Depo. at 288.

## DISCUSSION

Defendants argue that Plaintiff's suit is a "hybrid" section 301/fair representation suit which carries with it a six-month statute of limitations. Defendants contend that Plaintiff failed to institute this action within the required six months and that Plaintiff's claim is therefore time-barred. In the alternative, Defendants argue that Plaintiff has failed to allege sufficient facts to support a section 301/fair representation suit.

■■■■ An employee who brings a claim against an employer for breach of a collective bargaining agreement is first required to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 163, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983). "Subject to very limited judicial review, he will be bound by the result according to the finality provisions of the agreement." *Id.* at 164, 103 S.Ct. at 2290. However, when the union representing the employee in the grievance procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding. *Id.* Such a suit constitutes a "hybrid" claim; "the combination claim asserted that, on the one hand, plaintiff's employer had breached § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, by violating a collective bargaining agreement, and that, on the second hand, their union had ignored the duty of fair representation implied under the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq., with regard to the company's breach of contract." *Arriaga–Zayas v. Int'l Ladies' Garment Workers' Union*, 835 F.2d 11, 12 (1st Cir.1987). For such a 'hybrid' claim, the Supreme Court has held, the applicable statute of limitations is six months, as provided under § 10(b) of the NLRA, 29 U.S.C. § 160(b). *DelCostello*, 462 U.S. at 169, 103 S.Ct. at 2292.

■■■■ Plaintiff alleges in Count I that Defendants Georgia–Pacific and Local 2400 breached the Collective Bargaining Agreement, in violation of section 301 of the LMRA, by denying Plaintiff seniority and by refusing to process his grievance to arbitration. In addition, Plaintiff alleges in Count III that Defendant Local 2400 breached its duty of fair representation by refusing to endorse his grievance and by "harassing" him for his attempts to secure seniority. These two counts, amounting a direct challenge to the private settlement of disputes under the CBA, clearly constitute a hybrid section 301/fair representation claim. "The typical hybrid action involves a claim that the employer violated the collective bargaining agreement and the union failed to handle properly the grievance of the plaintiff-employee who was injured as a result of the employer's action." *Cabarga Cruz v. Fundacion Educativa Ana G. Mendez, Inc.*, 822

F.2d 188, 191 (1st Cir.1987). This is precisely what Plaintiff alleges in this case.

Plaintiff admits that his case has many of the characteristics of a hybrid suit but insists that this suit is distinguishable "in one critical respect." Pl.'s Resp. to Def. G–P Mot. Summ. J. at 3. Plaintiff claims that Georgia–Pacific "repudiated" the CBA grievance procedure by refusing to arbitrate and that, therefore, his case is more appropriately analogized to a contract action, which carries a longer statute of limitations. *Id.*

It is true that if an employer unequivocally repudiates a collective bargaining agreement an employee's action may, in some cases, be more appropriately classified as a common law breach of contract claim. *See Garcia v. Eidal Int'l Corp.*, 808 F.2d 717, 721 (10th Cir.1986). In *Garcia,* the defendant-employer engaged in a "sham" transaction designed solely for the purpose of voiding the collective bargaining agreement to which it was a party. *Id.* The *Garcia* court distinguished its case from *DelCostello* on the grounds that *Garcia* involved "not only an alleged unilateral repudiation of the grievance and arbitration process, but a severance of all existing contractual relations." *Id.* at 722. The court concluded that "[w]hen the contract has been completely repudiated and the employer has closed down its business, the labor law policies that persuaded the Court in *DelCostello* to adopt the uniform six-month statute of limitations are not applicable." *Id.* The record in this case, however, in no way suggests that Georgia–Pacific, by requiring Plaintiff to secure the endorsement of the Union before moving to a second step, "repudiated" the entire collective bargaining agreement or the dispute resolution procedure therein. To the contrary, the record indicates that Georgia–Pacific refused to move Plaintiff to a second step because it believed the terms of the CBA required such a refusal.

Contrary to Plaintiff's assertions, the First Circuit has unequivocally concluded that "a

suit to compel arbitration is *not* analogous to a garden-variety suit for breach of contract." *Communications Workers of Am. v. Western Elec. Co.,* 860 F.2d 1137, 1141 (1st Cir.1988) (emphasis added). The court reasoned:

> [A]rbitration clauses in collective bargaining agreements implicate important federal interests not present in ordinary ex contractu litigation. While the right to arbitrate is conferred by the parties' agreement, arbitration itself is a respected mechanism for the resolution of disputes over other, substantive contractual rights. We agree with the Sixth Circuit that arbitration is a core policy of the federal labor law because it brings about a "final adjustment of differences by a means selected by the parties." Arbitration clauses are thus sui generis and cannot, as a matter of federal law, be viewed as equivalent to more ordinary contractual provisions for limitation purposes. Refusal to arbitrate amounts to "a direct challenge to 'the private settlement of disputes under [the collective bargaining agreement].' "

*Id.* (citations omitted). Plaintiff's Complaint asserts a refusal on the part of his employer and his union to bring Plaintiff's grievance to arbitration. Pl.'s Resp. to Def. G–P Mot. Summ. J. at 4. As such, the claims arising out of such refusal to arbitrate are appropriately subjected to the federal six-month statute of limitations.[1]

Having concluded that Plaintiff's action is properly classified as a hybrid section 301/fair representation suit subject to the six-month statute of limitations, the Court next considers when Plaintiff's cause of action arose, setting the statute of limitations in motion.

"A cause of action in a hybrid Section 301/fair representation suit arises when the plaintiff knows, or reasonably should know, of the acts constituting the union's alleged wrongdoing." *Graham v. Bay State*

1. Plaintiff's reliance on *Cabarga Cruz* for the proposition that his case is best characterized as one for breach of contract is misguided. *Cabarga Cruz* was a wrongful termination case arising under Puerto Rico law, not a labor agreement. Moreover, the union representing the plaintiff in that case was not a party to the suit and there was no evidence of unfair representation. Here, on the other hand, Plaintiff has brought suit under the collective bargaining agreement against his union specifically alleging that it breached the duty of fair representation imposed by the NLRA.

*Gas Co.,* 779 F.2d 93, 94 (1st Cir.1985) (notice of union's refusal to process grievance triggers statute of limitations even though employee continued to request arbitration after such notice). "The limitations clock is activated by knowledge, actual or constructive; it begins to tick when the challenged conduct comes to light." *Arriaga–Zayas,* 835 F.2d at 13.

Plaintiff filed the present case on January 3, 1997. The question, therefore, is whether Plaintiff knew or should reasonably have known of the act constituting the union's alleged wrongdoing before July 3, 1996. Defendants, in their respective motions, argue that Plaintiff's cause of action arose on March 1, 1996, when Plaintiff was notified by Blake that the Union would not take action on his grievance or his request for a mediator from the International, and that the six month statute of limitations began to run on that date.

■ Viewing the evidence in a light most favorable to Plaintiff, the Court is persuaded that Plaintiff's cause of action for the purposes of the statute of limitations arose on March 1, 1996. By this point, the Union had met at least four times to specifically discuss Plaintiff's claim and unequivocally rejected it at least twice by majority vote. For six months, from September, 1995, until March, 1996, the Union consistently took the position that it would not grant Plaintiff seniority and it formally notified him of that position on March 1, 1996.[2] Blake Depo. at 107.

■ Plaintiff argues that while the cause of action may have arisen on March 1, 1996, the statute of limitations was tolled until the fall of 1996, while he reasonably and in good faith continued to pursue internal private remedies. It is true that the *DelCostello* statute of limitations may in some cases

be tolled by the pursuit of internal union remedies. *See, e.g. Robinson v. Central Brass Mfg. Co.,* 987 F.2d 1235, 1242 (6th Cir.1993); *Frandsen v. Brotherhood of Ry., Airline and S.S. Clerks, Freight Handlers, Express and Station Employees,* 782 F.2d 674, 681–84 (7th Cir.1986). Both *Robinson* and *Frandsen* stand for the proposition that the *DelCostello* statute of limitations may be tolled while the employee attempts to resolve his grievance through *intra-union* procedures available to him. The *Robinson* and *Frandsen* courts recognized this equitable tolling doctrine in an attempt to reconcile *DelCostello* with the general principle that an employee must ordinarily exhaust intra-union procedures when doing so would not be futile. Tolling is not appropriate in this case, however, because there is no evidence that Plaintiff was pursuing intra-union remedies after March 1, 1996.

It is uncontroverted that on February 29, 1996, the Union voted not to support Plaintiff's seniority grievance, thereby dealing a fatal blow to Plaintiff's efforts to succeed on his claim. Regardless, Plaintiff submitted a grievance he drafted on February 2, 1996, to Eugene Greenlaw, a labor relations specialist at Georgia–Pacific, on March 1, 1996, for consideration. Pl.'s SOF ¶ 34. Greenlaw denied the grievance in writing on April 8, 1996, on the grounds that the CBA does not afford employees who have been on salary for 16 years the right to pick up seniority for their past years upon reinstatement to hourly employment. James Depo.Ex. 4. Three days later, without the endorsement of the Union and signing his own name on the line marked "Union Representative," Plaintiff requested "second step" grievance. *Id.* Plaintiff apparently justifies his signing on behalf of the Union, despite the fact that the Union refused to endorse his grievance, by noting

---

**2.** Plaintiff argues that his cause of action did not accrue until he suffered an actual injury as a result of Defendants' actions, and that this injury, in the form of a temporary layoff, did not occur until November, 1996. Plaintiff cites no authority for the proposition that a cause of action in a section 301/fair representation suit does not arise until the employee suffers actual harm. This theory flies in the face of the well established principle that a section 301/fair representation cause of action arises when the plaintiff knew or

reasonably should have known of the acts constituting the union's wrongdoing. As the First Circuit has noted in the discrimination context, "[i]t is altogether beside any relevant point that the [ ] plaintiffs continued to feel the effects of [an] ... adverse decision.... Whatever harms were suffered add up to nothing more than the predictable, albeit painful, consequences of the [grievance] denial." *Gilbert v. City of Cambridge,* 932 F.2d 51, 59 (1st Cir.1991).

that he was "still a steward of the Local." Pl.'s SOF ¶ 37. On April 16, 1996, Greenlaw refused to process Plaintiff's grievance to second step on the grounds that the Union had not endorsed his request. James Depo. Ex. 4. Greenlaw informed Plaintiff, "your written request to move [the] grievance ... to second step has to be approved by the local union.... Unless otherwise directed by your union officials, [your grievance] ... will be considered dropped." *Id.*

Plaintiff's attempt to by-pass the Union by dealing directly with Georgia–Pacific's representative after the Union unequivocally rejected his grievance cannot be considered pursuit of intra-union remedies and certainly would not be required by the exhaustion doctrine. *See, e.g. Arriaga–Zayas*, 835 F.2d at 15 (filing of unfair labor practice charge with NLRB does not toll statute of limitations on hybrid action arising out of same nucleus of operative fact). Such actions are therefore insufficient to justify an equitable tolling of the statute of limitations.

Plaintiff argues, however, that in addition to dealing with Greenlaw, he also continued to work with Union officials until November, 1996, thereby tolling the statute of limitations until that date. Plaintiff has failed to raise a genuine issue of material fact to support this allegation. It is a well settled principle that, for the purposes of a summary judgment motion, "[m]ere allegations, or conjecture unsupported in the record, are insufficient to raise a genuine issue of material fact." *Thomas v. Metropolitan Life Ins. Co.*, 40 F.3d 505, 508 (1st Cir.1994). Rather, a plaintiff "'must present definite, competent evidence to rebut the motion.'" *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992) (quoting *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)).

Plaintiff puts forth several unsubstantiated assertions to suggest that his grievance remained under consideration by the Union through most of 1996. First, Plaintiff alleges that on March 29, 1996, he was called into a first step grievance meeting already in progress at which his seniority grievance was discussed. Pl.'s SOF ¶ 35. Plaintiff does not point to any evidence to support this general assertion, nor does he offer any details re-

garding the subject matter of the meeting or who was present. Second, Plaintiff claims that "within the next two months," Union president Blake agreed to attempt to bring a representative from the International in to "discuss his seniority." *Id.* at ¶ 39. Plaintiff alleges that he inquired about the potential involvement of the International on several occasions, including as late as November, 1996, and that each time Blake responded only that he "still had no answer." *Id.* at ¶ 41. Once again, Plaintiff offers nothing to suggest that his grievance was under consideration by anyone other than himself after April 16, 1996. Plaintiff deposed Blake and Greenlaw at length yet he never inquired about discussions regarding his seniority grievance subsequent to April 16, 1996, nor did the deponents offer such testimony.

Neither Plaintiff's deposition, nor any other depositions taken by Plaintiff, suggest that the Union representatives ever again, after March 1, 1996, took action to address Plaintiff's seniority grievance. To the contrary, Plaintiff testified at his deposition:

Q: After Mr. Blake told you he wasn't going to sign the grievance—which was when approximately, sir?

MR. MCGUIRE: Objection to form.

A: It would be right around—I'm going to say the last of February, first of March, we had the discussion.

Q: And after that, he never indicated that the union would pursue your grievance; I think you've said that before, correct?

A: Yes.

Q: Nothing was done until this lawsuit was filed, correct?

A: Yes.

James Depo. at 288–89.

The Court is persuaded that Plaintiff did not pursue viable intra-union remedies after March 1, 1996. Whatever attempts Plaintiff may have made, if any, to advance his claim after the Union and his employer acted conclusively to dismiss his grievance are insufficient to justify equitable tolling of the statute of limitations.

Plaintiff argues that, regardless of the Court's decision regarding Counts I and III, the *DelCostello* statute of limitations should not apply to the declaratory judgment claim he asserts in Count II. Plaintiff's argument is without merit. It is well settled that "[t]o prevent plaintiffs from making a mockery of the statute of limitations by the simple expedient of creative labeling—styling an action as one for declaratory relief rather than for damages—courts must necessarily focus upon the substance of an asserted claim as opposed to its form." *Gilbert v. City of Cambridge,* 932 F.2d 51, 57 (1st Cir.1991). "[W]here legal and equitable claims coexist, equitable remedies will withheld if an applicable statute of limitations bars the concurrent legal remedy." *Id.* at 58. Plaintiff seeks a declaration of his rights under the CBA, the same rights which he claims Defendants violated in his hybrid claim which is barred by the statute of limitations. To allow Plaintiff to proceed with his declaratory judgment claim would undermine the important federal labor policies recognized in *DelCostello* and render the hybrid suit statute of limitations meaningless. As such, the Court concludes that Plaintiff's declaratory judgment claim is also subject to the six-month statute of limitations, and that it is therefore time-barred.

Finally, the Court turns to Plaintiff's "reserved claims," asserted in Count IV of the Complaint. Plaintiff has alleged various discrimination and retaliation claims which are pending before the Maine Human Rights Commission and the U.S. Equal Employment Opportunity Commission. Because Plaintiff has not indicated to the Court that he is prepared to assert these claims at this time, Count IV is dismissed without prejudice.

## CONCLUSION

The six-month statute of limitations applicable to Plaintiff's section 301/fair representation claim and his declaratory judgment claim began to run on March 1, 1996, and expired on September 1, 1996, well before Plaintiff instituted this action. Because Plaintiff failed to bring a timely claim, Defendants' Motions for Summary Judgment are GRANTED as to Counts I, II, and III. Count IV is DISMISSED without prejudice.

*SO ORDERED.*